UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| EUNICE AND GARY MANUEL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 09-CV-339-B-W |
| | ) | |
| CITY OF BANGOR, *et al.*, | ) | |
| | ) | |
| Defendants | ) | |

**ORDER GRANTING OPPORTUNITY TO AMEND COMPLAINT IN RELATION TO CLAIMS AGAINST THE CITY OF BANGOR AND ORDER SETTING RELATED DEADLINES IN ORDER TO RESOLVE THE CITY OF BANGOR'S MOTION TO DISMISS (Doc. No. 6 & 8)**

Eunice and Gary Manuel have filed suit against the State of Maine and the City of Bangor and various subdivisions of state and municipal government, as well as the United States Army, the United States Department of Housing, and a handful of private parties, including Bank of America, some of which have been served or have waived service and now have motions to dismiss pending. According to their *pro se* complaint and their briefs in opposition to the pending motions, the Manuels have had a difficult time settling into the Bangor area since arriving here in 2004, particularly with respect to finding suitable living arrangements for their family and finding, and keeping, gainful employment. Now pending are motions to dismiss by the City of Bangor and related subdivisions (Doc. Nos. 6 & 8), the State of Maine and its Bureau of Motor Vehicles (Doc. No. 9), and Bank of America (Doc. No. 5). The Court referred these motions for report and recommendation pursuant to 28 U.S.C. § 636. This order concerns the claims against the City of Bangor. I do not offer a recommendation at this time on the City's motion to dismiss, but rather grant the Manuels the opportunity to amend their complaint for

reasons that follow. After the Manuels are afforded this opportunity to amend, the City may renew its motion on existing or additional grounds, or not.

**Applicable Standard**

Federal Rule of Civil Procedure 12(b)(6), the procedural vehicle for the City's motion, provides that a complaint can be dismissed for "failure to state a claim upon which relief can be granted." In deciding a motion to dismiss, the court accepts as true the factual allegations of the complaint, draws all reasonable inferences in favor of the plaintiff that are supported by the factual allegations, and determines whether the complaint, so read, sets forth a plausible basis for recovery. Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008). To properly allege a civil action in federal court, it is not enough merely to allege that a defendant acted unlawfully; a plaintiff must affirmatively allege facts that identify the manner by which the defendant subjected the plaintiffs to a harm for which the law affords a remedy. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). The factual allegations need not be elaborate, but they must be minimally sufficient to show a plausible entitlement to relief so that the defendant will have "fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); Swierkiewicz v. Sorema N. A., 534 U.S. 506, 513 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions."). Additionally, because the Manuels are *pro se* litigants, their complaint is to be subjected to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). See also Erickson, 127 S. Ct. at 2200. As *pro se* litigants, their pleadings also may be interpreted in light of supplemental submissions, such as their responses to the motions to dismiss. Wall v. Dion, 257 F. Supp. 2d 316, 318 (D. Me. 2003). In addition, because the motions to dismiss do not discuss the elements

2

of the statutory claims identified by the Manuels, as *pro se* plaintiffs the Manuels should be afforded some opportunity to understand what the statutes require, along with an opportunity to supplement their allegations if they so choose, to avoid a scenario in which their claims are summarily dismissed with prejudice based on a failure to plead sufficient facts. Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 20 (1st Cir. 2004); Cote v. Maloney, 152 Fed. Appx. 6, 8 (1st Cir. 2005) (not submitted for publication); cf. Crawford-El v. Britton, 523 U.S. 574, 598 (1998) (discussing "the existing procedures available to federal trial judges in handling claims that involve examination of an official's state of mind" and noting that requiring a more definite statement affords a pragmatic approach to avoid subjecting officials "to unnecessary and burdensome discovery or trial proceedings," while still affording a reasonable opportunity for judgment to enter on the merits). [1]

## Plaintiffs' Allegations

As grounds for their action, the Manuels reference Title VI of the Civil Rights Act of 1964, Title II of the Americans with Disabilities Act, Title VIII of the Civil Rights Act of 1968, "and any other relevant laws that apply." (Compl. at 3.)

---

[1] "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." Conley, 355 U.S. at 48. But see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562-63 (2007) ("retiring" a different phrase from the Conley opinion that stated a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," quoting Conley, 355 U.S. at 45-46). See also Lalonde v. Textron, Inc., 369 F.3d 1, 6-7 & n.10 (1st Cir. 2004) (describing a motion for more definite statement as "the proper response" by a defendant as compared to a motion for dismissal on the merits); Hayduk v. Lanna, 775 F.2d 441, 445 (1st Cir. 1985) (affirming dismissal after "two opportunities to amend" as "well within the discretion of the district court" where plaintiffs were also advised as to what areas of the complaint lacked sufficient detail); Marcello v. Maine, 489 F. Supp. 2d 82, 85-86 (D. Me. 2007) ("Rule 12(e) is designed to provide relief for a defendant who is having difficulty crafting an answer in response to an overly vague or ambiguous complaint."); Haghkerdar v. Husson Coll., 226 F.R.D. 12, 13-14 (D. Me. 2005) (explaining that a motion for more definite statement is proper to address "unintelligibility," as "when a party is unable to determine the issues he must meet") (quoting Cox. v. Me. Mar. Acad., 122 F.R.D. 115, 116 (D. Me. 1988)).

The Manuels' complaint begins with an allegation that they have been subjected to illegal surveillance, discrimination, violence, civil rights violations, and property damage since moving to the Bangor area and continuing through the present.  The allegations that follow do not link the allegations of surveillance, violence, or property damage to the City of Bangor.  For that reason, I interpret this complaint as one based on alleged violations of federal anti-discrimination statutes.  Based on the statutes cited, the Manuels contend that they have been subjected to discrimination on the basis of race and disability.  For their remedy the Manuels request money damages, exclusively.  (Compl. at 3.)

I recite the balance of the material allegations in relation to the City of Bangor. Allegations related to other named defendants or unidentified parties are not recited here.  For example, among the Manuels' plaints are allegations related to computer viruses, electrical service, phone service, auto service, legal service, and medical service that cannot plausibly be attributed to the City of Bangor.  (Compl. ¶¶ 5, 6.)  With regard to the City of Bangor, the Manuels describe a period of unsettledness, beginning in 2004, while they navigated between Bangor's general assistance program, administered by the Bangor Department of Health and Community Services (BDHCS), the Bangor Homeless Shelter, which is not administered by the City of Bangor, and other services administered by entities other than the City of Bangor. According to the complaint, BDHCS evicted the Manuels from a men's shelter after Eunice Manuel arrived in Bangor to join the rest of the family living there.  Thereafter, according to the complaint, the "BDHS," which I construe as the BDHCS, offered to subsidize the Manuels' move into an apartment managed by B&L Properties, a private entity, but that move fell through when B&L Properties, with the assistance of the Bangor police, removed the Manuels from the premises.  The Manuels do not explain why this development is attributable to BDHCS or the

Bangor Police Department rather than B&L Properties. Unidentified Bangor police officers then took the Manuels to the Bangor Homeless Shelter, which did not (or could not) make shelter available to the Manuels. According to the Manuels, someone "sent" them to stay in a shelter in Ellsworth, but the Manuels took themselves back to "our city," using their own funds to acquire accommodations at the Ranger Inn in Bangor. While there, the Manuels discovered other families who said that "the Bangor Shelter" was housing them there. Eventually, when is not indicated, the Bangor general assistance program assisted the Manuels by getting them into a "shelter plus care program" where they resided for a spell, though for less than two years. Their stay at this location came to an end when they were "blamed for breaking a furnace." They sought to obtain housing through the Park Woods Project, also administered by BDHCS, but received "no help."[2] (Opposition to Joinder, Doc. No. 20.)

## Discussion

Among the statutes cited by the Manuels in their complaint is Title II of the Americans with Disabilities Act. Title II of the ADA "addresses discrimination by governmental entities in the operation of public services, programs, and activities." Buchanan v. Maine, 469 F.3d 158, 170 (1st Cir. 2006); 42 U.S.C. § 12132. A claim under Title II for injunctive relief does not require proof of discriminatory intent, but discriminatory intent on the part of the governmental entity must be demonstrated in the form of deliberate indifference in order to recover money

---

[2] There are additional allegations related to Eunice Manuel's employment at "BAFS." The Manuels do not describe what BAFS is, other than to say it is a factory job that has something to do with the Bangor International Airport. (Compl. ¶ 5.) According to information available on the web, BAFS is a private catering company that partners with the Airport to provide catering services. The Manuels do not allege that Eunice was employed by the City. Evidently airport authorities took away Eunice's "badge" to access the premises after she lost her job with BAFS. There is no allegation that the City played a role in her termination.

damages in a *respondeat superior* scenario.³ Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001); Bartlett v. New York State Bd. of Law Exam'rs, 156 F.3d 321, 331 (2d Cir. 1998). Deliberate indifference is demonstrated when the institution is provided with notice of harm to a federally protected right and an opportunity to rectify the situation, but fails to take reasonable measures to ensure compliance. Wills v. Brown Univ., 184 F.3d 20, 41 (1st Cir. 1999); Duvall, 260 F.3d at 1139.

The Manuels also raise Title VI of the Civil Rights Act of 1964. Title VI prohibits institutions receiving federal funds from engaging in racial discrimination in the administration of federally-funded programs. 42 U.S.C. § 2000d. In order to recover money damages under Title VI the plaintiff must demonstrate discriminatory intent on the part of the institution in question, not merely an act of discrimination by a lower-level officer of the institution. Guardians Ass'n v. Civil Serv. Comm'n, 463 U.S. 582, 584 (1983); Latinos Unidos de Chelsea En Accion v. Secretary of Housing and Urban Dev., 799 F.2d 774, 783 (1st Cir. 1986). The deliberate indifference standard logically applies with equal force to *respondeat superior*-type claims brought under Title VI. Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 641-42 (1999); Lovell v. Chandler, 303 F.3d 1039, 1056-57 (9th Cir. 2002); Sconiers v. Whitmore, No. 1:08-cv-1288-LJO-SMS, 2008 U.S. Dist. Lexis 101962, *44-45, 2008 WL 5113651, *16 (E.D. Cal. Dec. 1, 2008). After all, Title II directs that its remedies, procedures, and rights shall be the same as those set forth in the Rehabilitation Act. See 42 U.S.C. § 12133. In turn, the Rehabilitation Act points to the remedies, procedures, and rights set forth in Title VI. See 29 U.S.C. § 794a(a)(2).

---

³  By *respondeat superior* scenario, I mean to describe a scenario in which the plaintiff accuses a governmental entity of discrimination based on the conduct of lower-level officers.

As the foregoing authorities reflect, the Manuels' quest to recover money damages from the City of Bangor under Title II and Title VI cannot succeed without evidence that persons having supervisory oversight within the relevant city department had notice of the Manuels' allegations of discriminatory treatment yet failed to take reasonable measures to ensure compliance with federal law.  Liability under Title VI cannot be imputed to institutions based merely on the actions of lower-level employees.  Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 287-88 (1998) (addressing availability of money damages in Title IX context where liability for the institution would necessarily rest "on principles of vicarious liability or constructive notice" and likening Title IX to Title VI);  Monteiro v. Tempe Union High Sch. Dist., 158 F.3d 1022, 1034 (9th Cir. 1998) (applying Gebser rationale in Title VI context); Assenov v. Univ. of Utah, 553 F. Supp. 2d 1319, 1335 (D. Utah 2008) ("The purpose of this rule is to avoid making institutional defendants liable under Title VI on the basis of *respondeat superior* alone.")  This rule extends to the Manuels' claim under Title II, as well, because the Manuels request monetary relief as their exclusive remedy.  Duvall, 260 F.3d at 1138; Bartlett, 156 F.3d at 331.

The Manuels also cite "Title VIII," which is the Fair Housing Act, 42 U.S.C. § 3613. Pursuant to the Fair Housing Act (FHA), it is unlawful to discriminate in relation to housing based on a person's race, handicap, and certain other characteristics.  Id. § 3604.  For purposes of racial discrimination, the applicable prohibitions are stated in subsections (a) through (e) of § 3604.  For purposes of handicap discrimination, the applicable provisions are in subsections (e) and (f).  The FHA claim can be sustained with evidence of either discriminatory impact or discriminatory intent.  Latinos Unidos, 799 F.2d at 791.  The FHA permits an award of actual

and punitive damages based on a finding "that a discriminatory housing practice has occurred." 42 U.S.C. § 3613(c).

The City of Bangor asserts that the Manuels have failed to recite the elements of any cognizable cause of action and rely entirely on "labels, conclusions, and naked assertions." (Doc. No. 6 at 2.)  The Manuels' complaint does not consist entirely of labels and conclusions. There is enough detail for the City to understand the rough outlines of what the Manuels allege; *i.e.,* race and disability discrimination in relation to the Manuels' effort to obtain housing benefits through the City's general assistance program, including allegedly wrongful removal from the "shelter plus care program" and denial of access to the Park Woods facility.  The complaint relates rather vaguely that the material relationship began in 2004 and continued for some period of time thereafter and that the termination of the relationship was associated with an event for which the Manuels were "blamed," which I infer to mean wrongfully blamed.  All of the anti-discrimination statutes raised in this case attest to the "plausibility" of discrimination occurring in connection with the administration of government programs.  I note that the defendants have failed to cite any authority for the proposition that the Manuels must allege sufficient facts to support a prima facie case in order to state a claim under Rule 12(b)(6).  See, e.g., Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249-51 (9th Cir. 1997) (declining to impose a "prima facie case" pleading standard to a claim under the Fair Housing Act, pre-Iqbal); Ring v. First Interstate Mortgage, Inc., 984 F.2d 924, 926-27 (8th Cir. 1993) (same).  Post-Iqbal cases under the Fair Housing Act are scarce, but it seems unlikely that Rule 8(a)'s notice pleading requirements have been entirely abandoned in the context of statutory discrimination cases that present a far different scenario than the sort of constitutional Bivens claim addressed in Iqbal. See, e.g., Boykin v. KeyCorp, 521 F.3d 202, 214 (2d Cir. 2008).  At a minimum, the Manuels'

complaint suggests the possibility that evidence exists in support of their claims. Nevertheless, there are certainly shortcomings in the complaint, particularly as to the basis for acquiring relief against the City in the form of money damages under Titles II and VI, precisely because there is no factual content suggesting that any upper-level officials within the City ever had notice of what the Manuels contend were discriminatory acts in relation to housing, which is material to these two statutory claims due to the need to show deliberate indifference on the part of "the City," as discussed above. In addition, the claims under all three statutes suffer from a lack of facts that one would ordinarily expect to find in a discrimination complaint. For example, the Manuels have failed to indicate what racial group they identify with or what disability exists and how its existence would be known to persons within the City's general assistance program. Additional information in relation to relevant dates and any other facts suggesting unequal treatment based on race and/or disability would also enhance the notice provided to the defendant in the complaint.

Because they are *pro se* plaintiffs, the Manuels should have an opportunity to amend their complaint, should they deem it necessary, in order to allege such facts as may be known to them so that their claims are not dismissed with prejudice based on a pleading technicality. Additionally, their complaint as currently structured, without reference to separate counts for separate defendants or factual information as to particular allegations against particular defendants, is an invitation for summary dismissal for failure to state any claim against any defendant.[4]

---

[4] Additional defendants have also filed motions to dismiss and the Manuels might be well advised to consider this their one opportunity to file an amended complaint as to all defendants that sets forth separate counts and explains "who, what, when, and where" separately for each defendant.

**Conclusion**

For the reasons set forth above, I ORDER that the Manuels have the opportunity to amend their complaint to the extent they are able to afford the City with additional notice of the facts underlying their claims.  The deadline for compliance with this Order is October 30, 2009.  If the Manuels do not amend their complaint as allowed by this Order, I will issue a recommended decision on the City's motion based exclusively on the existing allegations.  In the event that the Manuels amend their complaint to supply additional allegations related to their claims against the City of Bangor, the City will have until November 13, 2009, to renew its motion on existing or additional grounds, or not.

*So Ordered.*
October 21, 2009                                        /s/ Margaret J. Kravchuk
                                                        U.S. Magistrate Judge