UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| EUNICE AND GARY MANUEL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 09-CV-339-B-W |
| | ) | |
| CITY OF BANGOR, *et al.*, | ) | |
| | ) | |
| Defendants | ) | |

**RECOMMENDED DECISION ON MOTION TO DISMISS
FILED BY FEDERAL DEFENDANTS (Doc. No. 22)**

Eunice and Gary Manuel have filed suit against the State of Maine and the City of Bangor and various subdivisions of state and municipal government, as well as the United States Army, the United States Rural Department of Housing (USDA), and a handful of other entities, including the Penobscot Community Health Center. The Army, the Rural Department, and the Health Center have filed a combined motion to dismiss. I refer to the moving defendants as "the federal defendants" for ease of reference, except when describing the allegations relating to each entity. The Court referred the motion for report and recommendation. I recommend that the Court grant the motion, in the main, with two exceptions.

**The Allegations**

The Manuels' complaint includes the federal defendants in its list of named defendants, but it does not recite any factual allegations pertinent to these defendants except to allege that Penobscot Community Health Center (PCHC) stopped prescribing Gary his Z[y]prexa medication. (Compl. at 2.) However, in opposition to the instant motion to dismiss, the Manuels have offered more allegations concerning each defendant.

*a. Allegations related to PCHC (see Doc. No. 25)*

PCHC has served as a health care provider for Gary Manuel. According to Gary Manuel, his assigned physician kept suggesting to him that he should stop taking his medications (Zyprexa and Doxepin) because of unnecessary health risk. Mr. Manuel's physician also told him to lose weight or he would stop prescribing the medication. According to Mr. Manuel, his physician asked him why he had settled in Maine "because there [are] not many other black people in Maine." Mr. Manuel also alleges that he is routinely made to wait in the lobby, sometimes 30 minutes beyond his scheduled appointment time, even though there is no one else waiting in the lobby. Mr. Manuel alleges that he resisted his physician's request to draw blood samples because of his family religion and grew tired of bending to his physician's will on the threat of losing his prescriptions. Mr. Manuel relates that he was permitted to consult with another physician and nurse practitioner about the relationship between his heart health and his medication, but that it did not work out how he wished because he would not submit to blood testing, though he did undergo an EKG. Eventually he was told to find another mental health provider. It is not stated whether Mr. Manuel still receives health care service from PCHC. Mr. Manuel basically alleges that he was denied his right to choose a doctor within PCHC because he is a black man with a mental disability. He maintains that he was otherwise subjected to rude treatment so he would leave and find another care provider.

*b. Allegations related to the Rural Department (see Doc. No. 24)*

With respect to the Rural Department, Eunice Manuel relates that she went to a branch office in Bangor to see whether they could get assistance in their efforts to obtain a home loan. According to Ms. Manuel, the personnel in the office acted like they did not provide any loan assistance programs and tried to send the Manuels to a lender. However, she also states that

when she requested an application she was provided with one and with assistance filling it out. Thereafter, they were told that someone would call, but no one did. When Eunice Manuel called later, she was told that the application was denied because of a delinquent credit history. A counseling session followed and the Manuels did what they could to have old information on Eunice Manuel's credit report removed and to explain to the Rural Department how it came to pass that "the accounts on my credit report got to the status of collection." Despite these efforts, the Rural Department still denied the application. The Manuels voiced the opinion that they were the victims of discrimination and a worker at the Rural Department referred them to mediation and alternative dispute resolution. They allege that their complaint should have been sent to the United States Department of Agriculture, Office of Civil Rights, instead. Eunice Manuel states that she was told the Rural Department could help those with questionable credit but that was not her experience. She believes that they were discriminated against because Gary Manuel wears dreadlocks in his hair and that this was part of a conspiracy to force the family into a "setup situation." She believes they would not have been misled about administrative procedures if there had not been discriminatory intent. These events are alleged to have occurred in September of 2006.

      c.  *Allegations related to the Army (see Doc. No. 22)*

The complaint against the Army concerns an effort by either Gary or Eunice Manuel to reenlist. The complaint does not make it plain who was attempting to reenlist, though I infer it was Eunice Manuel given the absence of any specific mention of disability. In any event, either Gary or Eunice has a reentry code 3 (RE code 3) and was told to wait until two years after discharge to apply for reenlistment. Although a waiver was given and a chance to enlist was extended in May 2007, the timing was not right for the Manuels, and Gary or Eunice reapplied in

3

2008.  It took a long time to get an answer concerning this waiver but, it seems, reentry was denied.  It is alleged that the process was not performed correctly, that advice was not afforded about administrative appeal rights, and that civil rights were violated in the process.  There is no allegation that these alleged wrongs were a product or discrimination based on race or disability.

## Applicable Standards

The federal defendants contend that the Manuels' claims against them are subject to summary dismissal under Rule 12 of the Federal Rules of Civil Procedure either because the complaint fails to state a basis for this Court's subject matter jurisdiction (Rule 12(b)(1)) or because the complaint fails to state a claim for which relief may be granted (Rule 12(b)(6)).  The standards that apply to these challenges are as follows.

   *a. Subject Matter Jurisdiction*

The federal defendants contend, among other things, that the Manuels' claims against them must be dismissed pursuant to Rule 12(b)(1) for failure to allege facts reflecting that this Court has subject matter jurisdiction.  In particular, the federal defendants argue that the complaint fails to allege that the Manuels complied with administrative prerequisites to filing.  (Mot. to Dismiss at 4.)  Subject matter jurisdiction concerns the power of the court to hear and decide a claim.  Torres-Negron v. J & N Records, LLC, 504 F.3d 151, 159 n.5 (1st Cir. 2007).  The party asserting the claim bears the burden of proof on the issue of whether the Court has the authority (subject matter jurisdiction) to decide the claim.  Johansen v. United States, 506 F.3d 65, 68 (1st Cir. 2007).  By proof, it is meant "that jurisdiction must be apparent from the face of the plaintiffs' pleading."  PCS 2000 LP v. Romulus Telecomms., Inc., 148 F.3d 32, 35 (1st Cir. 1998).  When the defendant is the federal government, sovereign immunity will preclude an exercise of subject matter jurisdiction unless the plaintiff can identify a clear and unambiguous

4

expression of consent by Congress to permit the claim to proceed against the federal government.  "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text, and will not be implied.  Moreover, a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign."  Lane v. Pena, 518 U.S. 187, 192 (1996).

  *b.  Failure to State a Claim*

  Federal Rule of Civil Procedure 12(b)(6), another of the procedural vehicles for the defendants' motion, provides that a complaint can be dismissed for "failure to state a claim upon which relief can be granted."  In deciding a motion to dismiss, the court accepts as true the factual allegations of the complaint, draws all reasonable inferences in favor of the plaintiff that are supported by the factual allegations, and determines whether the complaint, so read, sets forth a plausible basis for recovery.  Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008).  To properly allege a claim in federal court, it is not enough merely to allege that a defendant acted unlawfully; a plaintiff must affirmatively plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, __ U.S. __, __, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  Additionally, because the Manuels are *pro se* litigants, their complaint is subjected to "less stringent standards than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520 (1972).  As *pro se* litigants, their pleadings also may be interpreted in light of supplemental submissions, such as their responses to the motion to dismiss.  Gray v. Poole, 275 F.3d 1113, 1115 (D.C.Cir.2002); Wall v. Dion, 257 F. Supp. 2d 316, 318 (D. Me. 2003).

In appropriate circumstances, *pro se* litigants also may be entitled to an opportunity to amend before their claims are dismissed with prejudice. Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 20 (1st Cir. 2004); Cote v. Maloney, 152 Fed. Appx. 6, 8 (1st Cir. 2005) (not submitted for publication); cf. Crawford-El v. Britton, 523 U.S. 574, 598 (1998) (discussing "the existing procedures available to federal trial judges in handling claims that involve examination of an official's state of mind" and noting that requiring a more definite statement affords a pragmatic approach to avoid subjecting officials "to unnecessary and burdensome discovery or trial proceedings," while still affording a reasonable opportunity for judgment to enter on the merits).[1] The Manuels have already been put on notice of their opportunity to amend their complaint. (See Doc. Nos. 29 &30). While a subsequent amendment may operate to clarify and save those claims that I do not recommend be dismissed at this time, in my view the bulk of these claims are subject to dismissal for lack of subject matter jurisdiction which no amendment could possibly cure so I have proceeded with my recommendations in light of that reality.

## Discussion

The federal defendants filed their motion to dismiss based on the Manuels' failure to allege essentially any facts against them, which made it impossible to understand how the

---

[1] "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." Conley, 355 U.S. at 48. But see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562-63 (2007) ("retiring" a different phrase from the Conley opinion that stated a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," quoting Conley, 355 U.S. at 45-46). See also Lalonde v. Textron, Inc., 369 F.3d 1, 6-7 & n.10 (1st Cir. 2004) (describing a motion for more definite statement as "the proper response" by a defendant as compared to a motion for dismissal on the merits); Hayduk v. Lanna, 775 F.2d 441, 445 (1st Cir. 1985) (affirming dismissal after "two opportunities to amend" as "well within the discretion of the district court" where plaintiffs were also advised as to what areas of the complaint lacked sufficient detail); Marcello v. Maine, 489 F. Supp. 2d 82, 85-86 (D. Me. 2007) ("Rule 12(e) is designed to provide relief for a defendant who is having difficulty crafting an answer in response to an overly vague or ambiguous complaint."); Haghkerdar v. Husson College, 226 F.R.D. 12, 13-14 (D. Me. 2005) (explaining that a motion for more definite statement is proper to address "unintelligibility," as "when a party is unable to determine the issues he must meet") (quoting Cox. v. Me. Mar. Acad., 122 F.R.D. 115, 116 (D. Me. 1988)).

complaint could support an exercise of subject matter jurisdiction by the Court or how the complaint could possibly state a claim against the federal defendants. In opposition to the motion, the Manuels supplemented their complaint by reciting allegations pertaining to each of the federal defendants. Notwithstanding this supplementation by *pro se* litigants, the federal defendants declined to file a reply memorandum. In the context of *pro se* litigation, this is not how matters are supposed to unfold. Following the Manuels' supplementation of their complaint to include specific allegations against the federal defendants, the federal defendants should have supplemented their motion to dismiss to account for those allegations.[2] Given their failure to do so, I have addressed their arguments under Rule 12(b)(1) and Rule 12(b)(6) only to the extent that the applicable law plainly forecloses a finding of subject matter jurisdiction and to the extent that the supplemental factual allegations are plainly deficient to state a claim for discrimination.[3]

In their complaint the Manuels cite Title II of the Americans with Disabilities Act, Title VI of the Civil Rights Act of 1964, Title VIII of the Civil Rights Act of 1968, "and any other relevant laws that apply." (Compl. at 3.) They do not cite specific provisions of these titles. The only relief they seek is money damages. (Id.) I address the federal defendants' Rule 12 arguments in the context of each statute. Because the Manuels are *pro se* litigants, I also address whether their claims for money damages might proceed under the Rehabilitation Act or the Equal Credit Opportunity Act, both of which statutes are more likely sources of relief against federal executive departments and agencies.

---

[2] I certainly would have extended the deadline for the reply memorandum under these circumstances, had the federal defendants requested it.

[3] The federal defendants suggest that this is a case involving a tort claim subject to the administrative filing requirements of the Federal Tort Claims Act. I do not interpret the Manuels' allegations to relate a state law tort claim. They are obviously attempting to raise a claim of discrimination under federal law.

*a. Title II*

Title II of the ADA is not applicable to the federal government because neither the federal government nor its departments and agencies are included in the statute's definition of public entity. 42 U.S.C. § 12131; Cellular Phone Taskforce v. FCC, 217 F.3d 72, 73 (2d Cir. 2000). Also, because Title II of the ADA "addresses discrimination by governmental entities in the operation of public services, programs, and activities," Buchanan v. Maine, 469 F.3d 158, 170 (1st Cir. 2006), it does not confer subject matter jurisdiction over the claims against Penobscot Community Health Center (PCHC) unless PCHC is an instrumentality of the state or local government. Nothing in the complaint suggests this. Accordingly, I recommend that the Court dismiss the Title II claims against these defendants based on a lack of subject matter jurisdiction.

*b. Title VI*

Title VI, which prohibits discrimination on the basis of race, color, or national origin under any program or activity receiving federal financial assistance, 42 U.S.C. § 2000d, "does not apply to programs directly administered by the federal government." Maloney v. Soc. Sec. Admin., 517 F.3d 70, 75 (2d Cir. 2008); See also Williams v. Glickman, 936 F. Supp. 1, 5 (D. D.C. 1996); Marsaw v. Trailblazer Health Enter., LLC, 192 F. Supp. 2d 737, 750 (S.D. Tex. 2002). Moreover, even if it did, Title VI does not contain an unequivocal waiver of the sovereign immunity that otherwise exists for the federal government and its executive agencies. Consequently, the Manuels' Title VI claims against the Army and the Rural Department for money damages are subject to dismissal under Rule 12(b)(1). Dorsey v. United States Dep't of Labor, 41 F.3d 1551, 1554-55 (D.C. Cir. 1994). However, Title VI does reach private health care entities that receive federal assistance, here PCHC. 42 U.S.C. § 2000d-4a(3). Gary Manuel

contends that PCHC harassed him and subjected him to disparate treatment on account of his race. PCHC has not addressed the adequacy of these allegations because it declined to file a reply to the Manuels' opposition that set forth the allegations for the first time.

    *c. Title VIII*

Title VIII, the Fair Housing Act, prohibits discrimination in relation to housing based on a person's race, handicap, and certain other characteristics. 42 U.S.C. § 3613. However, like Title VI, it does not authorize a suit for damages against the federal government. Latinos Unidos de Chelsea En Accion v. Sec. of Hous. and Urban Dev., 799 F.2d 774, 792-93 (1st Cir. 1986); Puerto Rico Pub. Hous. Admin. v. United States Dept. of Hous. and Urban Dev., 59 F. Supp. 2d 310, 320 (D. P.R. 1999); Almonte v. Pierce, 666 F. Supp. 517, 524 (S.D.N.Y. 1987). The Manuels' only allegations concerning housing relate to the Rural Department, a federal agency. Because the Manuels cannot recover money damages from the Rural Department, the Title VIII claim is subject to summary dismissal.

    *d. The Rehabilitation Act*

The Manuels' complaint makes no mention of the Rehabilitation Act. However, because they are *pro se* litigants, I presume that their claims against the federal defendants implicate the Rehabilitation Act. Unlike the foregoing statutory provisions, the Rehabilitation Act prohibits discrimination on the basis of disability "under any program or activity conducted by any Executive agency." 29 U.S.C. § 794(a). This prohibition extends not only to executive departments and agencies, but also to private entities receiving federal financial assistance. Id. § 794(b). The Rehabilitation Act also "prohibits discrimination on the basis of disability in employment decisions by the Federal Government." Lane, 518 U.S. at 193 (citing 29 U.S.C. § 791). However, the availability of damages from a federal defendant is qualified. Damages are

not available from a federal department or agency based on discrimination in any programs or activities generally. Lane, 518 U.S. at 192. Rather, damages are available in two contexts: when the discrimination concerns federal employment and when the discrimination concerns "violations committed by federal funding agencies acting as such—that is, by 'Federal provider[s].'" Id. at 193. The Rehabilitation Act is a potential source of subject matter jurisdiction with respect to the Rural Department's lending programs and PCHC's health services. However, the Rehabilitation Act cannot be applied in relation to the employment decisions of the armed services.[4] Pilchman v. Dep't of Def., 154 F. Supp. 2d 415, 420 (E.D.N.Y. 2001); Smith v. Christian, 763 F.2d 1322, 1325 (11th Cir. 1985).

Despite the potential existence of subject matter jurisdiction over the claims against the Rural Department, the complaint fails to allege that there is any connection between the existence of a disability and any decision related to a credit application with the Rural Department. Consequently, the complaint fails to state a plausible claim of disability discrimination in relation to the Rural Department. As for PCHC, the complaint does include an allegation that Gary Manuel was subjected to discrimination on account of his disability, although it does not offer much to discern what the alleged disability is.

---

[4] Even if subject matter jurisdiction exists on a claim of employment discrimination against the Army, the complaint fails to state a claim against the Army under the Rehabilitation Act because it fails to even suggest (let alone support a plausible inference) that the decision concerning Eunice or Gary Manuel's reenlistment was influenced by the existence of any disability.
 Title VII of the Civil Rights Act of 1964 prohibits discrimination in employment in military departments, but that prohibition applies only to civilian employees, it does not extend to uniformed members of the armed services, including applicants for enlistment. Middlebrooks v. Leavitt, 525 F.3d 341, 344-45 & n.1 (4th Cir. 2008); Roper v. Dep't of the Army, 832 F.2d 247, 247-48 (2d Cir. 1987); Collins v. Secretary of Navy, 814 F. Supp. 130, 131-32 (D. D.C. 1993).

### e. Equal Credit Opportunity Act

The ECOA prohibits "any creditor" from discriminating "with respect to any aspect of a credit transaction[,] on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a). The ECOA defines creditor to include "any person who regularly extends, renews, or continues credit," or arranges the same, and expressly includes government or governmental subdivisions or agencies. Id. § 1691a(e)-(f). The ECOA also subjects "any creditor" to civil liability for damages, including punitive damages. This language has been read to waive the federal government's sovereign immunity to claims for money damages. Garcia v. Vilsack, 563 F.3d 519, 521 (D. D.C. 2009)[5]; Sanders v. Vilsack, No. 7:08-cv-126(HL), 2009 U.S. Dist. LEXIS 40770 , *13, 2009 WL 1370919, *5 (M.D. Ga. May 14, 2009). That resolves the Rule 12(b)(1) issue with regard to the Rural Department. The Rural Department's Rule 12(b)(6) arguments were premised on the total absence of any material allegations in the complaint. The Rural Department failed to reply, however, to the factual allegations set forth in the Manuels' opposition. The Court should interpret the Manuels' complaint about discrimination in lending practices as invoking the provisions of the ECOA and should leave the onus on the Rural Department to articulate its grounds for dismissal in light of the Manuels' factual allegations. I do not by this recommendation intend to suggest that the allegations would necessarily survive a properly articulated Rule 12(b) motion. I have simply not undertaken a sua sponte discussion of every defense or argument that could possibly be raised now that the Manuels have at least given some factual content to their allegations.

---

[5] The Garcia opinion includes a discussion of a "failure to investigate" claim under the Administrative Procedures Act. However, the APA does not appear to offer any prospect of relief in the form of money damages, 5 U.S.C. § 702, and the availability of legal remedies under the ECOA calls into question the Manuels' ability to obtain judicial review under the APA, in any event. 5 U.S.C. § 704; Garcia, 563 F.3d at 525.

*f.  Summation*

Based on the foregoing analysis of the federal statutes implicated by the Manuels' allegations, the Court has subject matter jurisdiction over claims against PCHC under Title VI and the Rehabilitation Act.  The Manuels' supplemental allegations allege both racial and disability discrimination and PCHC has not replied to these allegations.  As for the Rural Department, the Rehabilitation Act and the ECOA confer subject matter jurisdiction, but the Manuels allege only racial discrimination with respect to their application for credit from the Rural Department.  Consequently, only the ECOA is in play with respect to the Rural Department.  As for the Army, the Manuels fail to identify a statutory scheme that would give the Court authority to hear and decide a claim of employment discrimination.  Moreover, their allegations fail to state a plausible connection between a decision on Eunice or Gary Manuel's reenlistment and any bias concerning race or disability.[6]

**Conclusion**

For the reasons set forth above, I RECOMMEND that the Court GRANT, IN PART, the federal defendants' motion to dismiss (Doc. No. 22) by:

---

[6] In prior orders granting the Manuels an opportunity to amend their complaint in relation to claims against Bank of America and the City of Bangor, I advised the Manuels that their existing allegations did not set forth a plausible entitlement to relief in the form of money damages under Title VI because of a need to demonstrate more than discriminatory intent on the part of a lower-level officer.  See Guardians Ass'n v. Civil Serv. Comm'n, 463 U.S. 582, 584 (1983);  Latinos Unidos de Chelsea En Accion v. Secretary of Housing and Urban Dev., 799 F.2d 774, 783 (1st Cir. 1986).  I also noted that the claims against the City of Bangor could be faulted for failure to identify the disability at issue.  Additionally, I indicated in the prior orders that, because "[a]dditional defendants have also filed motions to dismiss[,] . . . the Manuels might be well advised to consider this their one opportunity to file an amended complaint as to all defendants that sets forth separate counts and explains 'who, what, when, and where' separately for each defendant."  (Doc. No. 30 at 7 n.4.)  The deadline for amending their complaint, should the Manuels decide to do so, is today.  In the event the two remaining federal defendants wish to renew a motion to dismiss as to the allegations I have recommended not be dismissed, I will consider supplemental motions and argument from the PCHC and the Rural Department on the remaining claims on the timetable set out in the prior order, which calls for supplemental briefing by November 13, 2009.  If the federal defendants choose to proceed in that fashion, I would recommend that the Court not view their failure to object to this recommended decision as in any way a waiver of their right to challenge by way of motion to dismiss the "new" allegations I have identified under the ECOA, Title VI, and the Rehabilitation Act as to the two remaining federal defendants.

*DISMISSING* all claims against PCHC with the exception of the Title VI claim and a claim under the Rehabilitation Act;

*DISMISSING* all claims against the Rural Department with the exception of an ECOA claim; and

*DISMISSING* all claims against the Army, without exception.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

October 30, 2009