UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| EUNICE AND GARY MANUEL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 09-CV-339-B-W |
| | ) | |
| CITY OF BANGOR, *et al.*, | ) | |
| | ) | |
| Defendants | ) | |

**RECOMMENDED DECISION ON MOTIONS TO DISMISS**

In this matter, *pro se* Plaintiffs Eunice and Gary Manuel are attempting to pursue civil claims for money damages against all of the following defendants: the Army, the Rural Housing Service, the Penobscot Community Health Center, the State of Maine Bureau of Motor Vehicles, the City of Bangor/ Bangor Department of Health and Community Services, Bank of America, Penquis Community Action, the Bangor Area Homeless Shelter, B&L Properties, and the Gilbert and Grief Law Firm. As this varied cast of defendants would suggest, the Manuels complain about a broad range of disconnected happenings. Many of the concerns voiced in their pleadings, such as allegations of surveillance, violence, property damage, computer viruses, electrical problems, and telephone service issues, have no evident connection with any of the named defendants. In a prior recommended decision I recommended that the Court dismiss the claims against the last four of the defendants listed above because the Manuels have failed to demonstrate that the defendants were served. (Doc. No. 63.) The remaining defendants have all filed motions to dismiss the claims against them. Of the three motions filed by these defendants, the only motion that I recommended be granted, without qualification, was the State of Maine's

motion to dismiss claims concerning the Bureau of Motor Vehicles. That recommended decision issued October 21, 2009. (Report & Recommended Decision, Doc. No. 28, addressing State of Maine's Mot. to Dismiss, Doc. No. 9.) However, with respect to the federal defendants, I issued another recommended decision on October 21, 2009, advising that the Court dismiss certain claims over which the Court clearly lacked subject matter jurisdiction, including all claims against the Army, but granted the Manuels leave to supplement certain other allegations related to the Penobscot Community Health Center and the Rural Department.[1] (Doc. No. 31.) As for the remaining defendants, I ordered the Manuels to supplement their pleadings in an amended complaint with respect to certain allegations (Doc. Nos. 29 & 30). In terms of the Court's referral of the pending motions for report and recommendation, the following claims remain to be addressed, organized by defendant:

*Penobscot Community Health Center*: a claim under Title VI and a claim under the Rehabilitation Act for alleged discrimination in regard to the provision of health services;

*The Rural Housing Service (Rural Department)*: a claim under the Equal Credit Opportunity Act in regard to an application for financing;

*The City of Bangor / Bangor Department of Health and Community Services*: a claim of disability discrimination under Title II of the Americans with Disabilities Act, a claim of race discrimination under Title VI, and a claim of race and handicap discrimination under the Fair

---

[1] The recommendation called for dismissal of all claims against the Army, without exception. (Doc. No. 31 at 13.) In the federal defendants' supplemental motion, the Army addresses some new contentions made by Ms. Manuel in objection to my prior recommendation concerning dismissal of claims against the Army. (Federal Defs.' Supplemental Mot. at 7, Doc. No. 55, referencing Objection, Doc. No. 45.) Because I have already recommended dismissal of the claims against the Army and because the new contentions are presented in an objection directed to the Court, I do not address the new contentions here. I do note, however, that a conclusory assertion about unspecified privacy violations is not sufficient to state a plausible entitlement to relief.

Housing Act (Title VIII) in connection with the Department's administration of housing and related services under its general assistance program.

*Bank of America*:  claims of discrimination in lending practices under the Fair Housing Act, the Equal Credit Opportunity Act, Title II, Title VI, and, belatedly, Title III.

In response to the recommended decision and orders described above, the Manuels have filed supplemental pleadings and the enumerated defendants have renewed or supplemented their motions in light of the additional allegations.  Based on my review of the pleadings, the motions, and the memoranda, I recommend that the Court grant the defendants' motions to dismiss and dismiss all of the claims in this action.

**Applicable Standard**

Federal Rule of Civil Procedure 12(b)(6), the procedural vehicle for much of these motions, provides that a complaint can be dismissed for "failure to state a claim upon which relief can be granted."  To decide a motion to dismiss, the court accepts as true the factual allegations of the complaint, draws all reasonable inferences in favor of the plaintiff that are supported by the factual allegations, and determines whether the complaint, so read, sets forth a plausible basis for recovery.  Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008).  To properly allege a civil action in federal court, it is not enough merely to allege that a defendant acted unlawfully; a plaintiff must affirmatively allege facts that identify the manner by which the defendant subjected the plaintiffs to a harm for which the law affords a remedy.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

Beyond requiring that a complaint present sufficient factual allegations to raise a plausible entitlement to relief, Rule 12(b) also permits a defendant to seek dismissal when it appears from the face of the complaint that a dispositive affirmative defense, such as a statute of

limitation, bars either the entire case or an individual claim presented in it.  Jones v. Bock, 549 U.S. 199, 215(2007);  Santana-Castro v. Toledo-Davila, 579 F.3d 109, 113-14 (1st Cir. 2009).

## Discussion

The following discussion is organized by defendant and is limited to those claims that have not been addressed previously in a recommended decision on the pending motions to dismiss.  For reasons that follow, I recommend that the Court grant the balance of the defendants' motions and dismiss the claims that were not previously addressed in the context of prior recommended decisions.

**A.   Penobscot Community Health Center**

Penobscot Community Health Center's motion to dismiss is conjoined with the motion presented by the Rural Department and the Army.  The allegations against the Health Center are to the effect that Gary Manuel received unequal treatment because he is black.  Mr. Manuel alleges that a Dr. Rusk asked him why he would move to Maine because there are few black people here.  Additionally, he alleges that Dr. Rusk and he had a disagreement about the appropriateness of continuing Mr. Manuel's prescription for Zyprexa.  Dr. Rusk told Mr. Manuel that it was bad for his heart and "harassed" him to lose weight.  According to Mr. Manuel, he was made to wait in the lobby longer than necessary when he arrived for his appointments.  Finally, he complains that the Health Center did not permit him to change doctors.  (Am. Compl. at 11, Doc. No. 37.)

Mr. Manuel contends that the Health Center treated him as less than human and harassed him to make him discontinue his relationship with the Center because of his race and mental disability.  (Id.)  The Health Center argues that dismissal is warranted because a disagreement about medication is not a denial of health care services unless the plaintiff can establish some

basis for a finding that the provider's judgment lacked any reasonable medical basis. Additionally, it argues that the allegations are insufficient because there is no way of discerning that Mr. Manuel suffers from a disability that substantially limits his ability to engage in a major life activity. (Supplemental Mot. to Dismiss at 12, Doc. No. 55.) As for race discrimination, the Health Center argues that it cannot be subjected to liability for damages under Title VI because the allegations do not suggest an abusive environment and because the pleadings fail to indicate that any claim of racial discrimination by Dr. Rusk was ever called to the attention of the Health Center's administration. (Id. at 13-14.)

      I agree with the Health Center on all issues. Mr. Manuel's allegations of disability discrimination under the Rehabilitation Act are deficient, in part, because they do not suggest any actual denial of health care services, or discrimination in the provision of health care services, due to the presence of a disability. 29 U.S.C. § 794. The pleadings are otherwise deficient because they fail to suggest any reasonable basis for finding that Dr. Rusk's assessment of the medication issue lacked any reasonable medical basis. Lesley v. Chie, 250 F.3d 47, 49 (1st Cir. 2001) (holding that medical provider's judgment is to receive deference absent a showing that it lacked any reasonable medical basis in a claim of discriminatory denial of treatment). Mr. Manuel may not have liked Dr. Rusk's medical opinion, and Dr. Rusk may not have appreciated Mr. Manuel's resistance to his advice, but that is not enough to give rise to a plausible inference of disability discrimination.

      With respect to the Title VI claim, the pleadings also fail to give rise to a plausible inference that Mr. Manuel was harassed or abused based on his race simply because he was allegedly asked why he, as a black man, would move to Maine and because he experienced a 30-minute wait prior to a visit with Dr. Rusk. An acknowledgement of race or an inquiry about a

person's background in the course of interpersonal communication does not give rise to a plausible inference of discriminatory bias. Moreover, any number of factual scenarios can explain a half-hour delay in an appointment with a health care provider. Nothing in these factual allegations makes the requested inference of racial bias more plausible than any number of innocent explanations. In any event, the allegations are devoid of facts capable of supporting an inference that the Health Center was deliberately indifferent to any allegedly disparate treatment based on race. Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 287-88 (1998).

**B.      Rural Department**

The allegations against the Rural Department are to the effect that the Rural Department discriminated against the Manuels, based on race[2], by failing to secure home financing for them. According to the pleadings, the Rural Department informed Ms. Manuel that her application for financing was turned down because of a delinquent credit history (some past accounts designated as "in collection"). She alleges that she subsequently managed to have old information about her credit-worthiness deleted from her credit report, but complains that the Rural Department still failed to approve her application or to offer any lesser amount of financing in consideration of her actual credit-worthiness. Ms. Manuel alleges that they were treated unfairly because Mr. Manuel has disability income and because he wears dreadlocks in his hair. (Amended Compl. at 9.) These allegations are advanced under the Equal Credit Opportunity Act. My prior recommended decision on the Federal Defendants' motion to dismiss has already recommended dismissal of claims against the Rural Department brought under Title II of the ADA, Title VI,

---

[2]     According to the amended complaint, Mr. Manuel accompanied Ms. Manuel on a visit to the Rural Department's local office. (Am. Compl. at 9.) It appears that his income was included in the application.

Title VIII (the Fair Housing Act), and the Rehabilitation Act. (Recommended Decision on Mot. to Dismiss filed by Federal Defs., Doc. No. 31.)

The Rural Department seeks dismissal on two grounds. First, the Rural Department argues that the Manuels' claim cannot go forward because they failed to exhaust their administrative remedies pursuant to 7 U.S.C. § 6912(e). (Supplemental Mot. to Dismiss at 8, Doc. No. 55.) In support of this position, the Rural Department has offered evidence concerning mediation and other communications between the Rural Department and the Manuels subsequent to the denial of their application, including correspondence sent to Eunice Manuel containing notice of her right to appeal an adverse credit decision and notice of how to assert an administrative claim for violation of the Equal Credit Opportunity Act or an administrative claim for violation of the Fair Housing Act. (Id. at 9; Holmes Decl., Doc. No. 55-1; Holmes Decl. Exs. A-E, Doc. No. 55-2.) The Rural Department's second ground for dismissal is that the Manuels' claim under the Equal Credit Opportunity Act is barred by the two-year statute of limitation, 15 U.S.C. § 1691e(f). (Supplemental Mot. to Dismiss at 10.)

I recommend that the Court grant the motion to dismiss the claim under the Equal Credit Opportunity Act based on the fact that the Manuels' amended complaint establishes on its face that the Manuels commenced this civil action outside of the Act's two-year limitation period. Santana-Castro, 579 F.3d at 113-14. Specifically, they allege a credit application and subsequent mediation of their complaint in 2006. (Am. Compl. at 9.) They commenced this action in July 2009, more than two years after their encounter with the Rural Department.

**C.     City of Bangor**

The Manuels' claims against the City of Bangor have not been addressed in any prior recommended decision. Instead, an order issued to permit the Manuels to allege the who, what,

when, and where of their plaints concerning the City's general assistance program. In that order it was explained to them that they should address whether they ever raised their allegations of race or disability discrimination with anyone having supervisory authority to bind the City of Bangor. The Manuels have attempted to do so in their amended complaint. However, what they relate is simply their interaction with front-line administrators working inside the general assistance program to provide housing assistance and job-search assistance, such as "Mike" and "Hector" who supervised specific homeless shelters, or an unnamed general assistance supervisor who allegedly said that Mr. Manuel was banned from shelter assistance because he brought his wife to reside with him in the men's shelter. (Am. Compl. at 2.) Apart from homeless shelters, the Manuels allege impropriety in relation to subsidized apartments available at Park Woods. According to their amended complaint, Claire, the supervisor of that facility, told Mr. Manuel that no apartment was available in 2004, but in 2005 the family obtained admission into an apartment as part of a temporary housing program designed to assist residents with self-development and job-acquisition skills. (Id. at 3.) During the family's stay there, Ms. Manuel sought to take advantage of employment assistance programs managed by someone named Claire, possibly the same individual. According to the complaint, Claire had a connection at Eastern Maine Medical Center, but was unable to get Ms. Manuel a job there or to get her admitted into a nursing program. However, there is nothing stated in the amended complaint that would justify an inference that Claire or anyone else in the Park Woods program was in a position to guarantee any participant in the program admittance into a job or nursing program offered by another entity. The Manuels complain that the Park Woods program did not ultimately empower them or help the family in terms of employment. They also complain

because their participation in the program ended sooner than would normally have been the case "because [Park Woods] said that [ ] Gary broke the furnace." (Id. at 3.)

The City of Bangor asserts that it is entitled to dismissal of the claims against it because these allegations do not make an inference of race or disability discrimination plausible. The City also argues that dismissal of the claims under Title II and Title VI is appropriate, in any event, because the allegations do not suffice to demonstrate deliberate indifference on the part of the municipality with respect to any report of discrimination in the administration of its general assistance program. (City of Bangor's Mot. to Dismiss at 4-5, Doc. No. 51.) As for the Fair Housing Act (Title VIII), they argue that the claim is time barred under 42 U.S.C. § 3613(a)(1)(A). (Id. at 7.) The City is correct. The Manuels have failed to allege sufficient facts to support their claims for damages under Title II and Title VI because they fail to allege any plausible basis to infer that the City of Bangor itself was deliberately indifferent to an act of race or disability discrimination perpetrated by lower-level municipal employees. Gebser, 524 U.S. at 287-88.

Additionally, the Manuels' amended complaint relates that their past involvement with general assistance and related municipal programs ended no later than April 2006, when they moved into an apartment owned and operated by a non-municipal party. Their attempt to pursue a Fair Housing Act claim more than two years since that date is barred by the statute of limitation, 42 U.S.C. § 3613(a)(1)(A). Santana-Castro, 579 F.3d at 113-14.

**D.    Bank of America**

The Manuels allege that the Bank of America discriminated against them on the basis of race and/or disability in connection with a lending determination, in violation of the Fair Housing Act, the Equal Credit Opportunity Act, Title II of the ADA, and Title VI. Their

amended complaint relates that, in the fall of 2006, Ms. Manuel applied with Bank of America for a loan under the first-time home loan program. According to Ms. Manuel, a loan representative queried whether Ms. Manuel was working and where she was working before providing Ms. Manuel with a loan application form. After receiving the form, Ms. Manuel asked about whether her husband's and her children's social security income should be reflected in the application. Ms. Manuel also informed the representative that she had "a certificate" from a home ownership program managed by Penquis, a regional agency that serves primarily low-to-moderate income individuals. According to Ms. Manuel, the representative counseled her to seek financing in an amount greater than what Ms. Manuel initially requested, in order to account for costs. It is also alleged that the representative advised Ms. Manuel not to include Mr. Manuel on her application because he is disabled and on SSI. Ms. Manuel did as she was advised. (Am. Compl. at 6.) This evidently had the effect of reducing household income by at least half. Elsewhere in the amended complaint, the Manuels relate that Ms. Manuel earned $18,000 annually in the fall of 2006 and that Mr. Manuel received the same amount through SSI. (Am. Compl. at 9.) Ms. Manuel did not hear from the bank for a spell and called to inquire about her application. She learned that her application was denied based on her credit report and annual income. Ms. Manuel complained that negative information on her credit report was old and outdated and the representative informed her that it was up to the loan adjuster whether to disregard old debt. (Am. Compl. at 6.) The factual allegations against Bank of America do not include any reference to race being a factor in the lending decision.

      Bank of America seeks dismissal of the claim under Title II of the ADA because it is not a governmental entity. (Def. Bank of America's Second Mot. to Dismiss at 5, Doc. No. 52.) As indicated in my prior order granting the Manuels leave to amend, Title II of the ADA "addresses

discrimination by governmental entities in the operation of public services, programs, and activities," Buchanan v. Maine, 469 F.3d 158, 170 (1st Cir. 2006); 42 U.S.C. § 12132, and therefore does not apply to Bank of America.

Bank of America also argues that the Title VI claim cannot go forward because the allegations do not recite a plausible basis for inferring discrimination based on race. (Second Mot. at 5-6.) The argument also has merit. Nothing in the complaint suggests that race had anything to do with the lending decision. Ms. Manuel does not divulge her race in the complaint and she relates that Mr. Manuel was not involved in the application process. There is no factual content to suggest that any bank representative allegedly involved in this matter had any knowledge of the fact that Mr. Manuel is a black man. Accordingly, the Manuels fail to state a plausible claim of discrimination based on race.

Bank of America challenges the Manuels' claim under the Fair Housing Act on the ground that there is no allegation of racial discrimination (id. at 7), which is a meritorious argument due to the absence of any facts implicating Mr. Manuel's race. As for disability discrimination, Bank of America challenges the allegation that any loan officer would discourage the inclusion of Mr. Manuel as an applicant if his social security income could increase the likelihood that the Manuels would qualify for financing. Bank of America believes that, if Ms. Manuel was counseled to omit Mr. Manuel from the application, it was likely due to a possible representation by Ms. Manuel that his credit score would undermine her application, otherwise it would make absolutely no sense, says Bank of America, to omit his income from the loan application. (Id.) Bank of America maintains that a claim cannot be maintained under these circumstances, in any event, because the Manuels never submitted an application that included Mr. Manuel as an applicant, arguing that Mr. Manuel therefore has no standing to allege

11

disability discrimination.  (Id.)  Bank of America makes similar arguments concerning any theoretical claim under the Equal Credit Opportunity Act.  (Id. at 8.)  Of course, as has already been discussed, both of these statutes impose a two-year statute of limitation on private enforcement actions.  15 U.S.C. § 1691e(f) (ECOA);  42 U.S.C. § 3613(a)(1)(A) (FHA).  Consequently, the Manuels are barred from bringing these claims because their amended complaint relates that Ms. Manuel applied for the loan in the fall of 2006, more than two years prior to the commencement of this action.

     Lastly, Bank of America flags the fact that the Manuels' amended complaint now includes a reference to "Civil Rights III."  This is reasonably interpreted as a reference to Title III because it is otherwise apparent from the history of the Manuels' pleadings that their references to "Civil Rights VI +++ II" are meant to identify Title II and Title VI of the Civil Rights Act.  Correspondingly, their reference to Civil Rights III should be interpreted as a reference to Title III.  Title III is a component of the Americans with Disabilities Act and provides:  "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation . . . ."  42 U.S.C. § 12182.  With respect to any claim of disability discrimination that Mr. Manuel might have under Title III in relation to Bank of America's provision of lending products or services, I agree with Bank of America that Mr. Manuel fails to allege a plausible claim of denial of participation because the amended complaint fails to allege that he attempted to participate in Ms. Manuel's application but was denied the opportunity to do so on account of his alleged disability.  The mere provision of advice regarding the application, as alleged, does not state a plausible claim for denial of an opportunity for Mr. Manuel to participate in Ms. Manuel's loan application, had the Manuels wished to proceed in that fashion.

## Conclusion

For the reasons set forth above, I now RECOMMEND that the Court GRANT the motion to dismiss filed by Penobscot Community Health Center and the Rural Department of Housing (Doc. Nos. 22 & 55), dismissing all claims not addressed in the prior recommended decision (Doc. No. 31); GRANT the motion to dismiss filed by Bank of America (Doc. Nos. 5 & 52); and GRANT the motion to dismiss filed by the City of Bangor (Doc. Nos. 6 & 51). This recommended decision and the recommended decisions issued October 21, 2009 (Doc. No. 28), October 30, 2009 (Doc. No. 31), and December 15, 2009 (Doc. No. 63), will dispose of all claims against all of the named defendants in this action, if the Court adopts the recommendation following its *de novo* review.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

January 5, 2010