UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| EUNICE AND GARY MANUEL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CV-09-339-B-W |
| | ) | |
| CITY OF BANGOR, *et al.*, | ) | |
| | ) | |
| Defendants | ) | |

**ORDER ON PENDING MOTIONS AND ORDERS**

Gary and Eunice Manuel have had a difficult time since moving to the city of Bangor, Maine in 2006. They feel they were treated inappropriately by a number of local, state, and federal agencies and by a number of local businesses, and they suspect the root of their troubles is racial and disability discrimination. In 2009, acting *pro se*, they filed a lawsuit against a host of these entities. The Defendants filed motions to dismiss, which have been carefully reviewed by the Magistrate Judge, and in each case, the Magistrate Judge recommended dismissal. Having performed a *de novo* review of each motion to dismiss, the Court agrees with the Magistrate Judge, affirms the Recommended Decision, and grants each motion to dismiss.

There is a set of Defendants, however, that the Plaintiffs have not yet properly served. The Court issued an Order to Show Cause and referred the Manuels' response to the Magistrate Judge for a Recommended Decision. Although the Plaintiffs' failure to serve the remaining Defendants six months into their lawsuit would justify dismissal without prejudice, which is what the Magistrate Judge recommended, the Court sets forth the details of Rule 4 and allows the Plaintiffs thirty days to effect service of process. If they fail to do so, the Court will dismiss without prejudice the Complaint against the unserved Defendants.

## I.      PROCEDURAL HISTORY

On July 31, 2009, Eunice Manuel and Gary Manuel filed suit on their own behalf and on behalf of their children against the city of Bangor (City), General Assistance, Bangor (GA), the Penquis Community Action Program (Penquis), Park Woods (Woods), the Bangor Area Homeless Shelter (Homeless), the state of Maine (State), the state of Maine Department of Motor Vehicles (DMV), the Department of Rural Housing (RDH), the United States Army (Army), B&L Properties (B&L), the Penobscot Community Health Center (Penobscot), the Bank of America (BOA), and Gilbert & Greif (G&G), a law firm.  *Compl.* (Docket # 1).  The lawsuit provoked a series of dispositive motions.  *Def. Bank of Am.'s Mot. to Dismiss* (Docket # 5) (*BOA Mot.*); *Def. City of Bangor's Mot. to Dismiss* (Docket # 6) (*City &  GA Mot.*); Park Woods *Joinder in Mot. to Dismiss of Defs. City of Bangor and City of Bangor General Assistance* (Docket # 8) (*Park Woods Mot.*); *State Defs.' Mot. to Dismiss* (Docket # 9) (*State Defs.' Mot.*); *Defs. United States Rural Dep't of Housing, United States Army, and Penobscot Community Health Ctr.'s Mot. to Dismiss* (Docket # 22) (*Fed. Defs.' Mot.*).[1]  Each motion has followed its own procedural path.

## II.      DISCUSSION

### A.      Bank of America's Motion to Dismiss: Docket # 5

---

[1] On March 1, 2010, just before the Court issued this decision, Gary E. Manuel filed a "Declaration."  He alleges that ever since he filed this lawsuit, "Police is threading the well being of me an my family in the way's of finding employment, pay bill's, and find legal representation for our case furthermore I'm facing great adversity in the pursuit of Justice for Me and My Family."  *Pl.'s Decl.* at 1 (Docket # 71) (spelling and punctuation in original).

Mr. Manuel gives three examples: 1) "The D.H.S. Department in Bangor has stopped my Tanifa benefits"; 2) "Bangor Police keep stopping me on curtain occasion when I'm taking care of my important business matter,,, (In giving me tickets for thing other then thing's the Bangor police stopped me for)"; 3) "My electric bill in my apartment is gone sky high since I put this case forward, the Bangor Hydro Electric Co. 'Said that electrical surge's is come through my apartment.'"  *Id.* (spelling and punctuation in original).

Because Mr. Manuel does not seek to further amend the Complaint to make these additional allegations or to add the parties against whom these allegations are directed, the Court assumes he filed the Declaration simply to inform the Court about his most recent troubles.

On August 20, 2009, BOA moved to dismiss, contending that the Manuels' Complaint did not meet the legal standards for a cause of action under *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). *BOA Mot.* The Manuels responded on August 28, 2009. *Pls.' Opp'n to BOA's Mot. to Dismiss* (Docket # 10). The BOA replied on September 3, 2009. *Def. Bank of Am.'s Resp. to Pls.' Objection to Mot. to Dismiss* (Docket # 14). The Manuels filed an additional opposition on September 18, 2009. *Opp'n to Req. Not to Dismiss Mot. to Dismiss Filed By Bank of Am.* (Docket # 19).

By Order dated October 21, 2009, the Magistrate Judge granted the Manuels an opportunity to amend their Complaint against the BOA. *Order Granting Opportunity to Am. Compl. in Relation to Claims Against Bank of Am. and Order Setting Related Deadlines in Order to Resolve Bank's Mot. to Dismiss (Doc. No. 5)* (Docket # 30). She set October 30, 2009 as the date by which the Manuels had to file an amended complaint and gave the BOA until November 13, 2009 to renew its motion to dismiss on existing or additional grounds. *Id.* at 7-8. The Manuels moved for an extension, which was granted, and on November 6, 2009, they filed an Amended Complaint. *Am. of Compl.* (Docket # 37) (*Am. Compl.*). The Magistrate Judge extended the time within which the BOA had to file any renewed motion. *Order* (Docket # 44). On November 23, 2009, the BOA filed a second motion to dismiss. *Def. Bank of Am.'s Second Mot. to Dismiss* (Docket # 52) (*BOA Second Mot.*).[2] On January 5, 2010, the Magistrate Judge recommended that the Court grant the BOA's motion to dismiss. *Recommended Dec. on Mots. to Dismiss* (Docket # 67) (*Rec. Dec.* # 67). On January 15, 2010, the Manuels objected to the Recommended Decision. *Pls.' Opp'n to Recommended Dec. on Mots.' to Dismiss # 3* (Docket # 68) (*Manuel Opp'n* # 68).

---

[2] The Manuels did not formally object to the BOA's second motion to dismiss, but the Magistrate Judge issued her Recommended Decision on the assumption that their earlier objection applied to the second motion to dismiss.

In their Amended Complaint, the Manuels set forth their allegations against the BOA:

In the Fall of 2006 I applied for a First Time Home Loan through [BOA] located at 1176 Union St in Bangor, ME, Because [BOA] works with many agencies to help low income people with the purchased there First Time Home through the Fannie Mae & Freddy Mac Fist Time Home Owner Ship Programs.  I Eunice asked someone in [BOA] that I would like to fill out for a home loan representative of [BOA] took a long time to reply to my request of applying for the home loan.  Once I was attended to by the Bank's loan representative the first thing she the Loan specialist of [BOA] said to me was WHAT BROUGHT YOU TO MAINE, ARE YOU WORKING I REPLIED YES THEN SHE ASK WHERE I TOLD THE LOAN REPRESENTATIVE OF [BOA] B.A.F.S. AN 2 OTHER JOBS, (THAT CONPENSATION TOOK PLACE BEFORE SHE EVEN GAVE ME MY APPLICATION FOR THE HOME LOAN).  While I was filling out the Home loan I asked the Bank's loan representative a couple of questions concerning some issues: Gary my Husband does he need to fill out a separate loan application an do we need his verification for his Social Security income, do [BOA] have any first time home owner ship programs an that I have a certificate from Penquis Home Owner Ship Program an do I need proof of my children SSI income, The Bank's loan representative asked if my Husband works I replied no he's receiving SSI.  The Bank's loan representative said since Gary is disabled an on SSI do not put him on the application also that proof of the children SSI income was not needed an that she need to contact someone about that Penquis Cap Certificate,,,  I gave the Bank's loan representative Darrell Gentry Superior of Penquis Home Owner Ship Program PHONE # 207-973-3605.  The Bank's loan representative said that she would have to get in contact with him,,,,,,  The Bank's loan representative said all is needed was proof of Eunice income an name of Eunice employer and I need not put my part time job on my first time home loan application also the Bank's loan representative said that I should put down a bigger amount on my Fist Time Home Loan Application because of the underwriting cost, I told the Bank's loan representative that I only need that amount an That I should be able to be approved for that amount but the Bank's loan representative strongly suggested that I put in a different amount on my First Time Home loan Application, So I finish filling out the loan application how it had t should be done, I asked when would I get notification if I was approved the Bank's loan representative smirked and said that they would call me.  [BOA] call my job to check to verify some thing about me but after [BOA] I notice my hours on my weekly schedule was decreased.  When I did not receive a call or a written response back from [BOA] letting me know what my status was I called the [BOA] at 207-947-0362, and asked to speak with someone about my loan application they put the call through to a Bank's loan representative she informed me that my First Time Loan application was disapproved, I asked why she said because of my credit report an annual income, I asked could I see the credit report the Bank's loan representative said yes, I came to [BOA] to view it while viewing the credit report I noticed very old debt on the report I asked was or was not these very old debts (Was the very old debts in the decision making approving or

disapproving my First Time Loan she stated that it was, I explained that a lot of my old creditors on my credit report were over the time that is allowed to be on my credit report old and should not accumulated in my loan decision because other people that was approved for there home loan by [BOA] told me that, "[BOA] did not consider very old debt", the Bank's loan representative responded and said the load adjuster some time do not considered very old debt on the applicant application, I asked why I was not done like that the Bank's loan representative stated to me "that is all up to the loan adjuster". while there I talked with a supervisor of [BOA] an complained that I think that I was discriminated upon, the [BOA] supervisor said that you have a right to feel that you was being discriminated upon but the fact is that you was deny upon my credit report, [BOA] supervisor did not giving my any way to resolve this matter.

Most recently I went to cash an employee check that was drawn off their bank and they charged me twice $6.00 each time to cash it when I asked my employer if they were suppose to do so they stated that as far as they know they are not suppose to.

<u>**NOTE!**</u>
<u>**THE MANUEL WAS RIGTHS WAS BROKEN UNDER CIVIL RIGHTS VI+++II, 1968 FEDERAL FAIR HOUSING ACT, AN UNDER 18 USC 371 ALSO ENTITLED TO CIVIL RIGTHS III**</u>

1.  I was denied a fair hearing by [BOA].
2.  I was conspired upon by [BOA] and my job so that I could not be able to buy a house.
3.  Gary and children was denied applying with me for our first time home loan at [BOA] because of there disabilities.

*Am. Compl.* at 6 (spelling and punctuation in original).

The BOA's second motion to dismiss analyzed the Amended Complaint as potentially making claims under Title VI of the Civil Rights Act, 42 U.S.C. § 2000d, the Fair Housing Act (FHA), 42 U.S.C. § 3613, (3) the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691, and 18 U.S.C. § 371, a criminal statute addressing conspiracies to commit offenses against the United States. *BOA's Second Mot.* at 4. The Bank contended that the allegations in the Amended Complaint do not state plausible causes of action under any of these statutes. *Id.* at 5-9.

5

On January 5, 2010, the Magistrate Judge carefully reviewed each of the factual allegations in the Amended Complaint and assessed whether the facts state a cause of action under any of the statutes under which the Manuels were proceeding.  *Rec. Dec.* # 67 at 9-12.  She concluded that they do not.  *Id.*  The Manuels' objection contends that they have

> fairly stated the issues surrounding our issue with them we can prove if given the chance that we were discriminated against based on our race as regarding denial of our application also discrimination based on disability is known by advising us not to add Gary's disability income on to the application knowing that Eunice would not qualify due to debt to income ratio regardless of credit.  Also, we stated that [BOA] was part of a network of people including the other Defendants who worked together in order to force us into a setup situation to be monitored and other unlawful things.

*Manuel Opp'n* # 68 at 2.

Despite the Manuels' opposition, as the Magistrate Judge pointed out, the Amended Complaint fails to divulge either Mr. or Ms. Manuel's race, and there is no factual allegation supporting the assertion in their opposition that any of the BOA's actions were related to race. The race discrimination claims under Title VI and the FHA must fail.  Further, as the Magistrate Judge explained, a Title II claim under the ADA is limited to claims against governmental entities and the BOA is not a governmental entity, and the factual allegations in the Amended Complaint are insufficient to sustain a cause of action under the Equal Credit Opportunity Act and under Title III of the ADA.  Finally, the Manuels may not maintain their civil conspiracy theories under 18 U.S.C. § 371, which is a federal criminal statute.

### B.    City of Bangor's Motion to Dismiss: Docket # 6

On August 20, 2009, the City and GA moved to dismiss the Manuels' Complaint on a number of bases:  1) first, as regards the claims the Manuels brought on behalf of their minor children, the law prohibits parents as non-lawyers from acting in a representative capacity for their minor children; 2) second, as regards claims against GA, the law does not allow causes of

action against departments of a municipality; and 3) third, as regards claims against the City, the Complaint does not contain sufficient facts to sustain the asserted causes of action.  *City & GA Mot.*  The Manuels filed an opposition to the motion on August 28, 2009, explaining that they had unsuccessfully attempted to obtain legal representation and asserting that the City had improperly placed Ms. Manuel and her daughter in a male-only shelter and then denied shelter care based on the improper placement.  *Opp'n to City & GA's Mot. to Dismiss* at 2 (Docket # 11).

On October 21, 2009, the Magistrate Judge allowed the Manuels to amend their Complaint against the City of Bangor.  *Order Granting Opportunity to Amend Compl. in Relation to Claims Against the City of Bangor and Order Setting Related Deadlines in Order to Resolve the City of Bangor's Mot. to Dismiss* (Docket # 29) (*Order Granting*).  In the Order, the Magistrate Judge alerted the Manuels as to the level of specificity required in their allegations and gave them a blueprint for amending the complaint.  She told the Manuels that a Title II claim under the ADA requires a plaintiff to demonstrate deliberate indifference in order to recover money damages and a Title VI Civil Rights Act claim requires discriminatory intent on the part of the institution, not merely a lower-level officer.  *Id.* at 5-6.  Thus, the Magistrate Judge wrote that

> the Manuels' quest to recover money damages from the City of Bangor under Title II and Title VI cannot succeed without evidence that persons having supervisory oversight within the relevant city department had notice of the Manuels' allegations of discriminatory treatment yet failed to take reasonable measures to ensure compliance with federal law.

*Id.* at 7.  She also instructed the Manuels that a FHA claim "can be sustained with evidence of either discriminatory impact or discriminatory intent."  *Id.*

7

On November 6, 2009, the Manuels filed an Amended Complaint containing allegations against "General Assistance":

## General Assistance

In the fall of early November of 2004 I Gary E. Manuel an my children Maverick, Athea and Peter arrived in Bangor, ME seeking shelter an tile I Gary E. Manuel could find house for my Family while in Bangor I went to the Men Shelter on Maine Street an spoke we MIKE (THE SUPERVISOR OR THE PERSON IN CONTROL OF THE MAINE STREET BANGOR MEN SHELTER) who told me that I could not stay because of my daughter. ("MIKE told me that only men could stay at a men shelter no females are allowed Furthermore MIKE told me that they would have to put me in to a family shelter") So MIKE sent my children an I to GENERAL ASSISTANCE were I had to give information about my family: <u>SOCIAL SECURITY CARDS, BIRTH CERETIFICATES AND WAS GIVEN A APPLICATION TO BE FILLED OUT, ON THAT APPLICATION I STATED THAT A FEMALE WAS IN THE FAMILY</u>. GENERAL ASSISTANCE sent the MANUEL Family to a MEN SHELTER at 17 BOLLING DR located ON PARKWOODS complex, When arriving at 17 Bolling Dr I Gary met with THIS PERSON THAT REFERRED TO HIS SELF AS SUPERVISOR OF THAT BANGOR MEN HOMELESS SHELTER HIS NAME WAS HECTOR, HECTOR STATED (THAT THEY SUPPOSED TO PUT YOU AND YOUR CHILDEN IN A DIFFERENT PLACE BECAUSE THIS IS A MEN SHELTER), I DID NOT SEE ANY OTHER FAMILYS ON THE COMPLEX, SO I TALKED TO WITH GENERAL ASSISTANCE PEOPLE AN HECTOR THE SUPERVISOR FOR THE MEN SHELTER ON 11/26/04 OR IN THAT WEEK ABOUT THE PROBLEM THAT I WAS HAVNG WITH SITUATION ABOUT, (WHY THEY PUT ME GARY & FAMILY CONSISTING OF A FEMALE IN A MEN SHELTER AN I WOULD LIKE TO GO TO A FAMILY SHELTER), BUT GENERAL ASSISTANCE AN HECTOR DID NOTHING. In December 06, of 2004 I went back to GENERAL ASSISTANCE (<u>BECAUSE I GARY WAS KICK OUT OT THE 17 BOLLING DR BANGOR MEN SHELTER BECAUSE I GARY HAD A FEMALE IN THERE IN FEMALE WAS NOT ALLOWED</u>) and talked to a receptionist IOWA which referred my to a GENERAL ASSISTANCE SUPERVISOR WHICH STATED TO I GARY THAT THEY COULD NOT HELP WITH SHELTER FOR MY FAMILY AN THAT SINCE I BROKE THE RULE OF THE MEN SHELTER,, <u>THAT I GARY IS BAND FROM SHELTER ASSISTANCE FOREVER</u>.

<u>NOTE! GENERA ASSISTANCE BROKEN THE MANUEL'S CIVIL RIGHT UNDER TITLE II, III, VI</u>

1. Family & I Gary did not supposed to be in that men shelter in the first place, General Assistance broke there own shelter rules by put the family that contain a (female) in a men shelter  <u>I was not denied my Rights</u>

2. General Assistance Supervisor an Hector Supervisor of the men shelter at 17 Bolling Dr did not to correct the problem after I Gary notifying them of the problem of a female being with me and that I did not belong in a men shelter with a female.

   <u>I was not allowed my Rights</u>

3. By having I Gary and the child as a family being the only family staying in the men homeless shelter complex and placing all other family in different place for a family to be together                <u>I was treated indifferently</u>

*Am. Compl.* at 2 (punctuation and spelling in original).

On November 23, 2009, the City and GA moved to dismiss the amended complaint. *Mot. to Dismiss Am. Compl.* (Docket # 51).  The City and GA reasserted that the Manuels cannot bring claims in favor of their minor children.  *Id.* at 1-2.  They also said that despite the blueprint the Magistrate Judge had set forth, the Manuels' allegations still failed to meet the legal requirements for their statutory causes of action.  *Id.* at 2-4, 6-8.

In her Recommended Decision, the Magistrate Judge agreed with the City.  She concluded that the allegations in the Amended Complaint do not allow an inference of race or disability discrimination, that the Title II and Title VI claims do not demonstrate deliberate indifference in the administration of the City's general assistance program by lower level employees, and that the FHA claim is time barred.  *Rec. Dec.* # 67 at 9.  In their objection to the Magistrate Judge's Recommended Decision, the Manuels simply reiterated that "we have clearly stated in our complaint the indifferences we were shown in regard to our families situation and if given the chance we can prove our allegations."  *Manuel Opp'n* # 68 at 2.

The Court has carefully reviewed the Manuels' Amended Complaint and fully concurs with the Magistrate Judge's assessment.  Despite the Magistrate Judge's clear guidance in her

Order granting them the opportunity to amend their complaint, the Manuels' allegations against the City and General Assistance within the City are insufficient to sustain their statutory claims and, as regards the FHA claim, are time barred.

### C.    Park Woods Motion to Dismiss: Docket # 8

On August 26, 2009, Park Woods joined in the City of Bangor and GA's motion to dismiss. *Park Woods Mot.*  In her Order granting the Manuels the opportunity to amend their complaint, the Magistrate Judge included Park Woods in her discussion about the nature and specificity of the allegations the Manuels would have to make against Park Woods in order to withstand a dispositive motion. *Order Granting* at 8.

The Amended Complaint contained the following allegations against Park Woods:

### Park Woods

The Manuel Family was looking around for an apartment but could not find one we put many applications in for apartment but none was approved, Some one in Bangor told us about the Park Woods, (But I remember in 2004 while on the Park Woods grounds I Gary asked Claire Supervisor of Park Woods did they have apartment for rent Claire said no), but this time when Eunice went to Park Woods Claire Supervisor of Park Woods said that Eunice would have to fill out an application.  In June of 2005 the Manuel family took part in a program namely Park Woods, It was a 2 year program, That entitled the families that participated in the program Help and the way of empowering them self to be self efficient, to security employment an to help them security housing for them family's, That is what Claire from [GA] a Supervisor of Park Woods said.  After finishing moving in to Park Woods apartment 247Griffin RD Eunice an I went to the Park Woods office to start with the program, the receptionist Iona referred Eunice and I to Carl we asked Carl about the help with employment Carl replied that Eunice would have to site up an appointment with Claire because that is Claire department, in that Gary did not have to work because of his disabilities, that Gary can work on his social skill, So Eunice met with Claire, Claire said she can call a friend of hers that works for EMMC and he can hook you up with a position there, but when I talked to her friend he just told me to fill out a application and when I mentioned it to Claire she acted like she did not said that, , But, other people in the Park Woods program were advised through Claire Supervisor of Park Woods about nursing program and other programs that people could apply for,  Some resident of Park Woods went through the programs and got employment, but the Manuel Family was not advised about any program through Park Woods So Eunice asked

10

Claire Supervisor of Park Woods about the programs or if she know of any, Claire Supervisor of Park Woods replied to Eunice that Park Wood do not have any programs and that Eunice have to check around to find out information about any job program.  PARK WOOD DID NOT LET THE MANUEL FAMILY STAY THE WHOLE TERM BECAUSE THEY SAID THAT I GARY BROKE THE FURNACE, PARK WOODS SAID THAT WE HAD TO FIND AN APARTMENT.  WE WHERE TURN DOWN FOR ALL APARTMENT THAT WAS IN THE BANGOR NEW PAPER EXCEPT B&L, WE ASKED SHAWN YARDLE FOR MORE TIME BECAUSE OF THE PROBLEMS WE THE MANUEL'S HAD WITH B&L BEFORE SO WE NEED MORE TIME TO FIND ANOTHER NOT OWNED BY B&L BUT SHAWN SAID THAT WE HAD TO MOVE NOW.

While at Park Woods we the (Manuel's),, Neighbor, Coworker an Park Woods worker kept referring to thing that they should not know of,, (like Carl one of the Supervisor at Park Woods told Gary that he works good on his home computer but we did not tell Carl that we had a home computer), <u>and that's one among many</u>

While there the Manuel Family was not given any help in seeking employment was not given a change to be put in any work shop to empower there self and also was not helped an any way to become self efficient

<u>**NOTE!**</u>
<u>**PARK WOODS BBROKEN THE MANUEL'S CIVIL RIGHT UNDER TITLE II, III VI, TITLE 18, U.S. Section 1701, Invasion of privacy act, Civil Liability Act 2002 PART 8 Mental Harm an title 18 usc 371 I THING AND IF BROKEN AN OTHER LAW PLEASE NOTE JUDGE**</u>

1.  **Park Woods treating the Manuel's as unequal tenants,**
    NOVEMBER OF 2004 PARK WOODS DID NOT TELL THE MANUELS THAT THEY HAVE APARTMENTS AN PROGRAMS FOR APARTMENT, WHEN ASKED ABOUT BY GARY PARK WOODS DENEY THEY EVEN HAD A <u>APARTMENT PROGRAM OR HOUSING PROGRAM</u>
    Park Woods treated the Manuel's different then others that went through the Park Woods Program by help <u>them to security employment through programs that Park Wood knew about but did not tell the Manuel's</u>
    Park Woods denied I Gary do process to fill out an application for Park Woods Program when I first arrived <u>in Bangor upon asking Clair supervisor of Park Woods</u>

2.  **Mental August**
    By blaming the broke furnace on the Manuel's CAUSE ARGUMENTS AN STRIFE BETWEEN THE MANUEL FAMILY because of the furnace and that we have to find a place quick

3.  **The Privacy Act of 1974**
    By put roamers about our private business around Bangor and the State of Maine with out the Manuel's PERMITTING

4. **By Bill of Rights Amendment IV**
   By parts to my car being stolen

5. **By Invasion of privacy on the Manuel Family,**
   Park Woods was not a Help tool for the Manuel's but was use as a place to HAVE SURVEILLANC ON THE MANUEL'S in secrecy for the means of creating of databases consisting of personal Information.

6. **By conspiracy with other against the Manuel Family for the cause of:**
   Park Woods & B&L conspiracy together to cause the Manuel Family Bad Credible in The State of Maine So the Manuel could only move certain places that was site up for surveillance

*Am. Compl.* at 3 (punctuation and spelling in original).

On November 23, 2009, Park Woods (with the City of Bangor and GA) moved to dismiss the Amended Complaint.  *Mot. to Dismiss Am. Compl.*  First, Park Woods reiterates that the Manuels are prohibited under law from bringing a civil law suit on behalf of their children.  *Id.* at 1-2.  Next, Park Woods contends that the Manuels failed to allege the "who, what, when, and where" as directed by the Magistrate Judge.  *Id.* at 4.  Although the Manuels state that "Claire" denied them an apartment in 2004, the Amended Complaint alleges that they were placed in an apartment at Park Woods in June 2005.  *Id.*  The remaining allegations include Claire's failure to obtain a job for Eunice at the Eastern Maine Medical Center, Park Woods' early termination of the Manuel lease based on a false allegation that Mr. Manuel had broken the furnace, and Park Woods' participation in a conspiracy to investigate, spread rumors, and besmirch the Manuels' credibility.  *Id.* at 4-5.  As Park Woods points out, however, the Amended Complaint does not tie any of these factual allegations to racial or disability discrimination.  *Id.* at 5.

The Magistrate Judge agreed with Park Woods.  *Rec. Dec.* # 67 at 7-9.  The Magistrate Judge concluded that the Amended Complaint failed to "allege any plausible basis to infer that the City of Bangor itself was deliberately indifferent to an act of race or disability discrimination

12

perpetrated by lower-level municipal employees." *Id.* at 9.  To the extent the claim against Park Woods is a FHA claim, the Magistrate Judge concluded that it was time barred.  *Id.*

The Manuels objected to the Magistrate Judge's Recommended Decision.  *Manuel Opp'n* # 68 at 2.  In their objection, the only mention of the City is in regards to the family having been evicted from the men's shelter after Eunice joined them there.  *Id.*  It is questionable whether the Manuels have effectively objected to the Park Woods portion of the Magistrate Judge's recommended decision.  Nevertheless, on the assumption the Manuels have interposed a general objection, the Court has carefully reviewed the allegations in the Amended Complaint and the Magistrate Judge's ruling and has concluded that the Magistrate Judge is undoubtedly correct in her assessment of the viability of the Manuels' claim against Park Woods.

### D.      United States Army Motion to Dismiss: Docket # 22

Although the Manuels named the Army as a Defendant in their original Complaint, they made no factual allegations against it.  *Compl.*  The Army moved to dismiss on October 9, 2003.  *Fed. Defs.' Mot. to Dismiss*.  The Manuels opposed the motion, and in their opposition made allegations that revealed the nature of their claim.  *Opp'n to Fed. Defs.' Mot. to Dismiss* (Docket # 23).  The Manuels stated that when someone (the person is never identified but is presumably either Gary or Eunice Manuel) went to the Army Recruiting Office in Bangor in 2007, the person was initially informed the RE code 3 prevented reenlisting in the Service, and that there would be a two-year interval for reenlistment after discharge.  *Id.* at 1.  The Manuels further claim that the person received a waiver but then "was unable to leave in May 2007."  *Id.*  When the person reapplied in March 2008, the person was told the waiver was good only for six months and a new waiver had to be obtained.  *Id.*  The Manuels complain of the Army's delay in handling the

request for a waiver, its failure to apprise the person of the available due process rights, and the reason the application for reenlistment was denied.  *Id.*

Even though not contained in the Complaint, in ruling on the Army's motion to dismiss, the Magistrate Judge reviewed the allegations in the Manuels' opposition to the motion to dismiss as if they were set forth in the Complaint.  *Recommended Dec.* at 3-4 (Docket # 31) (*Rec. Dec.* # 31).  She noted that there was no allegation that the Army's actions or inactions were related to race or disability.  *Id.* at 4.  The Magistrate Judge carefully reviewed each statutory basis underlying the Manuels' Complaint to determine whether the allegations stated a claim against the Army and concluded that "the Manuels fail to identify a statutory scheme that would give the Court authority to hear and decide a claim of employment discrimination. Moreover, their allegations fail to state a plausible connection between a decision on Eunice or Gary Manuel's reenlistment and any bias concerning race or disability."  *Id.* at 12.

The Magistrate Judge did not allow the Manuels to amend their Complaint against the Army and recommended that all claims against the Army be dismissed without exception.  *Id.* at 12 n.6, 13.  The Manuels ignored the Magistrate Judge's Order and when they filed their Amended Complaint on November 6, 2009, they included additional allegations against the Army.  *Am. Compl.* at 10.

On November 12, 2009, the Manuels objected to the Magistrate Judge's Recommended Decision regarding the Army.  *Objection to Recommend to Proceed With the Mot. to Dismiss Filed By U.S. Army and Bureau of Motor Vehicles* (Docket # 45).  In the Objection, Eunice Manuel asserts that the claim against the United States Army should be allowed to go forward because 1) her situation "was treated was very different than how they would have treated any of their other recruits, but my situation was handled like that because of their bias towards me," 2)

14

her "sensitive medical information" was released "to outside sources without my knowledge" which caused a "defamation of character and hardship in seeking other employment, living situation, and even in the community that I live in", and 3) "this situation can be doomed to repeat if not brought to the light." *Id.* at 2. The Army first responded on November 19, 2009, and indicated it did not object to the Recommended Decision. *Fed. Defs.' Resp. to the Recommended Dec.* (Docket # 48). The Army later responded on December 3, 2009. *Fed. Defs.' Resp. to Pls.' Objections to the Recommended Dec.* (Docket # 56). The Federal Defendants urged the Court to affirm the Recommended Decision and objected to any new allegations. *Id.* at 1-2. At the same time, in excess of caution, on December 3, 2009, the Army filed a supplemental motion to dismiss the Amended Complaint. *Fed. Defs.' Supp. Mot. to Dismiss* (Docket # 55) (*Fed. Defs.' Supp. Mot.*).

First, the Court agrees with the Army that the Manuels cannot continue to add allegations without permission from the Court. In their original Complaint, the Manuels elected to make no factual allegations against the Army at all. When the Army moved to dismiss, they made a series of allegations. The Magistrate Judge carefully reviewed the Manuels' response and recommended dismissal of the Complaint, even assuming the Complaint contained the factual allegations set forth in the Manuels' response. The Manuels' Amended Complaint added a new set of allegations against the Army and the Manuels' objection to the Recommended Decision added yet another set. In a court of law, the Army should not be required to defend against a moving target. The Court *sua sponte* STRIKES the allegations in the Amended Complaint as never authorized by the Court, and it does not consider the new allegations contained in the Manuels' objection.

Second, the Court agrees with the Magistrate Judge's view that even when the allegations in the Manuels' opposition to the Army's motion to dismiss are considered, the Manuels have failed to state a legal claim against the Army. This part of the Manuels' law suit falls woefully short of stating a federal cause of action.

###    E.    United States Rural Department of Housing Motion to Dismiss: Docket # 22

Similar to the Army, although the Manuels listed the United States Rural Department of Housing (RDH) as a defendant in their original Complaint, they made no factual allegations against the RDH. *Compl.* On October 9, 2009, the RDH moved to dismiss noting that the RDH is "not mentioned" in the Complaint. *Fed. Defs.' Mot. to Dismiss* at 2.

When the Manuels filed an opposition to the motion to dismiss, they presented a series of allegations against the RDH. *Opp'n to RDH's Mot. to Dismiss* (Docket # 24). The Manuels alleged that when they went to RDH to apply for a home loan, the RDH employees asked them what brought them to Maine and where they were from and then tried to send them to another lender. *Id.* at 1. When the Manuels persisted, Glen Blair of the RDH was called over and asked the very same questions—where are you from and what brought you to Maine. *Id.* They alleged that in September 2006, Mr. Blair assisted them in filling out the application and told them someone would call to let them know the results, but no one called. *Id.* The Manuels alleged that they had to call the RDH to determine the results of the application and were informed RDH denied them. *Id.* When the Manuels questioned the denial, Mr. Blair told them that the sole reason was Eunice Manuel's delinquent credit and that they otherwise had sufficient income to obtain a home loan. *Id.* at 2. Ms. Manuel complained that the credit problem was too old to count against them and Mr. Blair agreed. *Id.* He suggested that if they explained the situation to RDH and prevailed upon the credit reporting services to remove the old credit problem, RDH

16

would take the new information into consideration and might make a different decision.  *Id.* Despite getting some old credit issues resolved and removed and sending data to Mr. Blair, they were still denied.  *Id.*  Ms. Manuel informed Mr. Blair that she felt the RDH had discriminated against them, and Mr. Blair referred them to mediation or alternative dispute resolution.  *Id.* They asserted they were denied the loan because of their color, but the RDH concluded that they had been treated equally.  *Id.*  When Ms. Manuel went back to see Mr. Blair and question this ruling, she found he no longer worked there.  *Id.*  Ms. Manuel claims that their discrimination compliant should have been considered by the USDA Director of Civil Rights in Washington, D.C. and that Mr. Blair had misled them into participating in arbitration or mediation.  *Id.*  Ms. Manuel's thesis is that the RDH is commissioned to assist low income people to obtain home loans but "that is not what happened."  *Id.* at 3.  She believes she was discriminated against because her husband has dreadlocks and has a disability and that the RDH denial was part of a bigger plot against her family.  *Id.*

In her October 30, 2009 Recommended Decision, the Magistrate Judge recommended that the Court grant the RDH's motion to dismiss on all legal theories except one—the Equal Credit Opportunity Act claim.  *Rec. Dec.* # 31 at 11, 13.  The Magistrate Judge did not allow the Manuels to amend their complaint as against the RDH, *id.* at 12 n.6; nevertheless, on November 6, 2009, the Manuels filed an Amended Complaint, which essentially reiterated the factual allegations in their opposition.  *Am. Compl.* at 9.  On November 9, 2009, the Manuels filed an opposition to the Recommended Decision.  *Opp'n to Recommend of Dismissing Def. Rural Dep't* (Docket # 39).  In their opposition, the Manuels reiterated their earlier allegations and said that they are still trying to get a lawyer, that the allegations in the Amended Complaint show that their civil rights were violated, that they have sought help elsewhere, including the Senators'

office, Pine Tree Legal, and Bangor City Hall but have received none, and that it is suspicious that Mr. Blair left the RDH after his dealings with the Manuels. *Id.* at 1-2. On November 12, 2009, the Manuels filed a supplemental objection in which they alleged that by misleading the Manuels into filing for mediation or arbitration, Mr. Blair demonstrated that he was conspiring with others to deprive the Manuels of their civil rights. *Resp. Mem.* at 1 (Docket # 46). The RDH responded on November 19, 2009 and indicated it did not object to the Recommended Decision. *Fed. Defs.' Resp. to the Recommended Dec.*

On December 3, 2009, after the Manuels filed the Amended Complaint, the RDH, like the Army, treated the Amended Complaint as having been successfully filed against it and filed a supplemental motion to dismiss. *Fed. Defs.' Supp. Mot. to Dismiss.* The RDH urged the Court not to consider any new allegations, to conclude that the Manuels had failed to exhaust administrative remedies, to rule that there is no right to money damages under Title VI or the FHA, and to find that the Equal Credit Opportunity Act claim is time barred. *Id.* at 8-11.

The Magistrate Judge again addressed the Manuels' claim against the RDH in her January 5, 2010 Recommended Decision. *Rec. Dec.* # 67. In that Recommended Decision, she reached the question of whether the Manuels had filed the Equal Credit Opportunity Claim on a timely basis and determined that on the face of the Amended Complaint, the events took place in 2006 and the Complaint was not filed until 2009, more than two years later. *Id.* at 7. She recommended that the Court dismiss the Equal Credit Opportunity Claim because the Manuels had failed to file their Equal Credit Opportunity claim within the two year window. *Id.*; 15 U.S.C. § 1691e(f). The Manuels objected to the Magistrate Judge's Recommended Decision. Manuel Opp'n # 68 at 2. The Manuels only addressed the administrative exhaustion issue, saying that the mediation together with the RDH's failure to refer them to Washington, D.C.

should negate any failure to pursue administrative remedies.  *Id.*  The RDH responded on January 22, 2010 and indicated that the Manuels' objection failed to identify any legal error. *Fed. Defs.' Resp. to Pls.' Objections to the Recommended Dec.* at 1 (Docket # 70).

The Court has carefully reviewed the Magistrate Judge's Recommended Decisions in favor of granting the RDH's motion and supplemental motion to dismiss.  The Court concurs with the Magistrate Judge's recommendations for the reasons set forth in her Recommended Decisions.

### F.     State of Maine and State of Maine Department of Motor Vehicles Motion to Dismiss: Docket # 9

On August 27, 2009, the state of Maine and the DMV moved to dismiss the Manuels' Complaint.  *State Defs.' Mot.*  The basis of the motion was that the Complaint failed to make any factual allegations against either Maine or the DMV.  *Id.* at 2.  The State Defendants' motion elicited a response from the Manuels:

> The winter of 2006 I Eunice Manuel went to apply for her driving license in Bangor, ME at the Maine Bureau of Motor Vehicles in the airport mall, Eunice pass her writing test and proceeded to the driving examination.  I had to take the driving test several times as the examiner, at first the same one, kept failing me for the same reasons.  I knew that I had passed on my second try but was failed. Gary and I felt It was necessary for us to video tape the test to prove that I was being failed on purpose so we did that and the video clearly showed that she failed me that I Eunice Manuel should have not been failed on, I was failed on that try as well.  I then called to speak to one of the supervisors of the Maine Bureau of Motor Vehicles in Augusta, ME, the supervisors ask me to send in a copy of the video tape which I did do in order to put a stop to this and she advised me to take the examination again and that someone would be watching this time. I took the examination in March0, 2006 and that time I passed the examination.  I believe that this is clear evidence of discrimination and should not be tolerated.

*Pls.' Opp'n to State Defs.' Mot. to Dismiss* at 2 (Docket # 17).  The State Defendants replied that the Manuels' allegations do not set forth a common law or statutory basis for the claims of discrimination.  *State Defs.' Reply to Pls.' Opp'n to Their Mot. to Dismiss* at 2 (Docket # 18).

On September 25, 2009, the Manuels filed what they termed a sur-reply.  *Pls.' Opp'n to Mot. to Dismiss of Defs.' State of Maine and Maine Bureau of Motor Vehicles* (Docket # 21).  In their sur-reply, the Manuels do not elaborate on the facts underlying their claims against Maine and the DMV, but Eunice Manuel itemizes the trouble her inability to legally drive caused her and her family.  *Id.* at 2.

On October 21, 2009, the Magistrate Judge issued her Recommended Decision. *Recommended Dec.* (Docket # 28).  She recommended that the Court strike the three Manuel children as party plaintiffs.  *Id.* at 8.  After carefully analyzing the potential causes of action as alleged by the Manuels and reviewing the alleged facts, she recommended that the Court grant the State Defendants' motion to dismiss.  *Id.*

On November 6, 2009, the Manuels objected to the Recommended Decision and separately to the recommendation to strike the children as plaintiffs.  *Pls.' Opp'n to Recommend Mot. Dismiss of State of Maine* (Docket # 35) (*Pls.' Opp'n to Dismissal*); *Pls.' Opp'n to Recommend Strike of Manuel Children as Party Pls.* (Docket # 36) (*Pls.' Opp'n to Strike*). Regarding their objection to the recommended dismissal of the State and the DVM, the Manuels complained that a dismissal would show that "this defendants is immune to the Law" and that "these defendants can do heinousness crimes to the common people (Manuel Family that in deed has been reported) and be giving immunity from being accountable for there malicious and harmfully acts towards the Manuel family."  *Pls.' Opp'n to Dismissal* at 2.  Regarding the recommendation to strike the children as party plaintiffs, the Manuels challenged the policy underlying the rule against parental representation, saying that in this "unmmoral situations," "common sense takes over the rules of the law."  *Pls.' Opp'n to Strike* at 1.  They warn, "That is why some cases has been overturned by higher COURTS in the pass as will as in the future."  *Id.*

20

Having reviewed the Manuels' factual allegations, the Court concurs with the Magistrate Judge's assessment that they do not state a cognizable cause of action.  Ms. Manuel passed the written drivers' test but failed the road test multiple times.  While unfortunate, there is no basis to conclude that her inability to pass the road test was related to a fact that would generate a federal cause of action.  Further, regarding their right to represent their children, the Court cannot accept the Manuels' invitation to ignore the law.  The Court is bound by the law as handed down by the First Circuit and cannot create its own law based on policy arguments.  If, as the Manuels suggest, the First Circuit agrees with them on appeal and remands the case to the Court to allow the parents to represent their children, the Court will apply the new rule handed down by the First Circuit.

### G.   Penobscot Community Health Center Motion to Dismiss: Docket # 22

In their original Complaint, although the Manuels named the Penobscot Community Health Center (PCHC) as a Defendant, the Complaint makes only one reference to the PCHC: "All so Penobscot Health Centers stop prescribing Gary ziprexa medication cause mental anguish with in the family." *Compl.* at 2.  On October 22, 2009, the PCHC moved to dismiss the Complaint on the ground that the PCHC's decision to stop prescribing a medication would not be sufficient as a matter of law to state a federal cause of action.  *Fed. Defs.' Mot. to Dismiss* at 3-4.

On October 16, 2009, the Manuels filed a lengthy opposition to the PCHC's motion to dismiss:

### Penobscot Community Health Center

In the summer of 2007 I started going to Penobscot Community Health (Mental health) Center where I encounter problem with the doctor (Dr. Thomas Rusk MD) which the Penobscot Community Health Clinic place me (Gary E. Manuel) with,  From the first to the last visit Dr. Rusk kept suggesting to I (Gary E Manuel) that I come off my medications (Zyprexa 10mg and Doxepin 50mg) that I have been on ever since 1997, I told Dr. Rush no, But this problem went on

and on from Dr. Thomas Rusk MK, Dr. Rusk also threatened me saying that I (Gary E Manuel) would died, have heart attack or stroke with in a months time, If I did not stop taking my medication (Zyprexa 10mg and Doxepin 50 mg).  I talked to my therapist (Mary Ellen Corey MHRTC) about getting another doctor because I did not like how Dr. Rusk was treating me and talking to me but on the next visit Melinda my therapist told me that Penobscot Community Health (Mental Health) Center would not change my doctor (Dr. Rusk) to another Doctor.  Months latter On one of my doctor visit, Dr. Rusk started harassing me saying that I was gaining to much weight and if I do not loose it he would stop prescribing my medications so I had to stop eaten for a while, It went from one thing to another, (blood pressure is to high, your heart does not sound right) ever time harassing more in more, even to the point of Dr. Thomas Rusk MD asking me ("Why did I come to Maine because there is not many black people in Maine"), also I was treated differed then other patience in the way of offend wait 30 min after my appoint time and there was no on else in the lobby an tile I had a talk with Mary about the problem or the long wait when or patience get seen at there appointed time, I also notice that there were no other people of color like me at Penobscot Community Health (Mental health) Center wear I Gary E Manuel go for Mental health.  More in more harassment an tile Dr. Rusk ask for Blood to be drawn from me, I Gary E Manuel gave it the first, but I told Dr. Rusk it against our family religion,  After I told Dr. Rusk that, Dr. Rusk ask of me more often to have Blood test for different things, I Gary E Manuel was tired of beckoning to Dr. Rusk will and say no, That is when Dr. Rusk told me that he would no longer prescribe my medication, I talked to my therapist (Mary Ellen Corey MHRTC) about the situation and Mary Ellen Corey MHRTC told me that I would have to talk to Ann Holland MD about the situation, so I did talk to Ms Holland about It she said that the doctor is worried about your heart Gary, I saiy my heart is ok, So Ms. Holland told me to get a E.K.G. in if it come out ok, (That she would prescribe my medication her self), so I received a E.K.G. from Penobscot Community Health Center, My Reg Doctor looked at the results and told me that the results looks good, THAT'S WHEN IT CAME TO MY ATTENTION THAT THE DOCTOR, MARY ELLEN COREY SEND ME TO TALK ABOUT THE PROBLEM IN THE BEING WAS INDEED NOT DR. ANN HOLLAND MD BUT WAS MELINDA MOIRISSETTE PMH-NP CS, AFTER SEE THE NAME TAGE ON THE DOCTOR LOOK OVER MY EKG RESULTS WAS DR. ANN HOLLAND.  So on my next visit I showed my EKG results to MELINDA MORISSETTE PMH-NP CS (*But referred to me by MARY ELLEN COREY one time as DR. ANN HOLLAND*) I ask now will your prescribe my medication sense my EKG is alright, Melinda said I she not, (but if the head of Penobscot Community Health Center say it ok I will write your prescribe), So I meet with Sharon Swanson in the summer on 2009,

At that meeting Ms. Swanson did not have any problem with my Gary E Manuel receiving my medication I ask Ms Swanson would she call Melinda and told her that is replied yes Ms. Swanson called and Melinda told Ms Swanson that she do not want to to prescribe my medication to me any more, Ms. Swanson asked why Melinda replied that they want to take Blood from me for testing.

Ms Swanson told me to find another Mental Health Provider, I ask her why can't I have another doctor She replied I'm sorry but you can not.

Also after meeting with the really ***DR. ANN HOLLAND*** for the first seen going to Penobscot Community Health (Mental health) Center I received a letter for Penobscot Community Health Center stating that ***Dr. Ann Holland*** will no longer be worker for Penobscot Community Health Center.

### ***NOTE***

TO THIS EFFECT I GARY E MANUEL WAS TREAT LESS THAN A HUMANBEING, IMMORALIZED AND TO BE PROTRAYED AS AND IGNORANT PERSON

**NOT GIVEN THE RIGHT OF CHOICE:** (MY RIGHT TO CHOOSE ANOTHER DOCTOR AT PENOBSCOT COMMUNITY HEALTH CENT WAS TAKEN AWAY FROM ME BY DR. RUSK AND PENOBSCOT COMMUNITY HEALTH CENT BECAUSE OF MY RACE, AS A BLACK MAN).

**NOT GIVEN THE RIGT OF MAKE A DECISIONS:** (BECAUSE OF MY MENTAL DISABILITY DR. RUSK TOOK AWAY MY RIGHT THE DECIDED WHAT MEDICATION WOULD BE BETTER FOR I GARY E MANUEL).

**NOT GIVEN THE TO RIGHT TO BE TREATED EQUALLY:** (BY DR. RUSK TALKING TO ME AND A DERROGATORY, RUDE WAY AND TREATED INDIFFERENT BECAUSE OF MY COLOR FROM OTHERS THAT I HAVE WITNESS WITH MY OWN EYES, BUT NOT BEING TREATED AND GIVEN ALL RIGTHS THAT OTHER PATIENTS HAVE).

**NOT GIVEN THE RIGHT AS A PERSON:** (BY DR. RUSK HARRASSING ME SO I WOULD LEAVE AND FIND ANOTHER CLINIC TO GO TO FOR MEDICATIONS AND MEDICAL CARE, BUT NOT GIVEN RIGTHS OF A PATIENT AT PENOBSCOT COMMUNITY HEALTH CENT).

***Cause I Gary E Manuel Metal Anguish with my Family and Suffering, Personality Shift, Personality Complex, back pain, and paying for herbs medication for my illness, At a very bad time in my life': Take care of my DAD (THE LATE WESLEY S. BANKS AFFAIRES)***

*Pls.' Opp'n to PCHC's Mot. to Dismiss* (Docket # 25) (spelling and punctuation in original).

On October 30, 2009, the Magistrate Judge issued a Recommended Decision on PCHC's

Motion to Dismiss. *Rec. Dec.* # 31. Again, the Magistrate Judge carefully reviewed the alleged

facts and assessed whether those facts fit within a federal cause of action. *Id.* She determined

that the Manuels had not stated a claim under Title II of the ADA, since it is not applicable to the federal government, but she concluded that the Manuels' Title VI and Rehabilitation Act claims were sufficient to withstand the PCHC's motion to dismiss, since the Manuels alleged both racial and disability based discrimination.  *Id.* at 12-13.  On November 6, 2009, the Manuels filed an Amended Complaint, which repeated verbatim the allegations against PCHC set forth in their opposition to the motion to dismiss.  *Am. Compl.* at 11.

On November 9, 2009, the Manuels objected to the Recommended Decision.  *Pls.' Opp'n to the Recommend of Dismissing Def. PHCH* (Docket # 40).  In their objection, the Manuels seem to be under the impression that the Magistrate Judge made a recommendation against their civil and disability rights claims.  This is not quite correct.  The Magistrate Judge did recommend that the Court dismiss the Title II claim under the ADA because the federal government is not subject to suit under that statute; however, she also recommended that the Court allow the Title VI and Rehabilitation Act claims to go forward.  As regards the Manuels assertion that they should be allowed to proceed under 18 U.S.C. § 371, the Court rejects that contention since the statutory provision is a criminal conspiracy law and does not provide for a private cause of action.[3]  The PCHC responded on November 19, 2009, indicating it did not object to the Recommended Decision.  *Fed. Defs.' Resp. to the Recommended Dec.*

On December 3, 2009, in response to the November 6, 2009 Amended Complaint, the PCHC filed a supplemental motion to dismiss.  *Fed. Defs.' Supp. Mot.*  Regarding the Rehabilitation Act claim, the PCHC relies on the statutory prerequisite that the plaintiffs have a disability within the meaning of the law, and argues that the Manuels have failed to allege sufficient facts to bring themselves within that definition.  *Id.* at 11-12.   Further, the PCHC

---

[3] The Manuels also claim the right to proceed against PCHC under the Civil Liability Act of 2002.  *Pls.' PCHC Opp'n* at 2.  The Court is unaware what provision the Manuels are referring to.  There is a Civil Liability Act of 2002, but it was enacted in New South Wales and is not applicable to their case.

contends that there is no alleged correlation between the Manuels' disability and the PCHC's treatment decisions. *Id.* at 12-13. As regards the Title VI claim, the PCHC argues that the Manuels have not alleged sufficient facts to generate a race discrimination claim. *Id.* at 13-16.

On December 11, 2009, the Manuels filed an opposition to the supplemental motion to dismiss. *Pls.' Opp'n to Supplemental Mot. to Dismiss* (Docket # 61). The Manuels presented three supplemental facts:

1) Dr. Rusk told ME that if I do not give blood that he would not be my doctor.

2) I Gary E. Manuel did have blood test.

3) To the this present I'm not allowed to have a Medical Doctor at Penobscot Health Center.

*Id.* at 2 (punctuation in original). The Manuels went on to claim that PCHC denied Mr. Manuel medical treatment because of his race and because he has dreadlocks, that Dr. Rusk conspired with others to make up a reason to deny him entrance into PCHC, and that PCHC denied him access to a medical doctor and banned him without giving him a reason. *Id.* at 3.

On December 24, 2009, PCHC replied to the Manuels' opposition. *Reply to Pls.' Opp'n to the Supplemental Mot. to Dismiss* (Docket # 66). The PCHC objected to consideration of any new facts not contained in the Amended Complaint. *Id.* at 1. It concluded that the new allegations, in any event, did not change the proper outcome. *Id.* at 4.

On January 5, 2010, the Magistrate Judge issued a Recommended Decision on the PCHC's supplemental motion to dismiss. *Rec. Dec.* # 67. She agreed with the PCHC that the Manuels' claims under both Title VI and the Rehabilitation Act were insufficient to withstand the supplemental motion to dismiss. *Id.* at 4-6. On January 15, 2010, the Manuels objected to the Magistrate Judge's Recommended Decision:

> After I was denied access to the mental Clinic in the middle part of 2009, in Dec, 2009, [PCHC] denied me Gary E Manuel access to the Medical Clinic

*Manuel Opp'n* # 68 at 2. On January 22, 2010, the PCHC replied to the Manuels' response, claiming that the Manuels' objection claims no legal error. *Fed. Defs.' Resp. to Pls.' Objections to the Recommended Dec.* at 1.

The Court has carefully reviewed the Recommended Decision and concurs with the recommendation. For the reasons set forth in the Recommended Decision, the Manuels have failed to set forth sufficient facts that would allow the conclusion that PCHC violated either Title VI or the Rehabilitation Act.

### H.     Bangor Area Homeless Shelter, Penquis Community Action, B&L Properties, and Gilbert & Greif Law Firm Order to Show Cause: Docket # 54

In their original Complaint, the Manuels listed Bangor Area Homeless Shelter, Penquis Community Action, B&L Properties, and Gilbert & Greif Law Firm as named Defendants. *Compl.* at 1. On December 2, 2009, the Court issued an Order to Show Cause, noting that more than 120 have expired since the filing of the Complaint and service of process had not been timely made. *Order to Show Cause* (Docket # 54). The Court ordered the Manuels to show good cause in writing no later than December 21, 2009 why service had not been made and noted that the failure to do so would result in a dismissal as to those defendants. *Id.* On December 11, 2009, the Manuels responded that they had sent "everything to each of the Defendant's certified mail." *Resp. to Order to Show Cause* (Docket # 59). On December 15, 2009, the Magistrate Judge recommended that the action against these four Defendants be dismissed without prejudice for failure to effect service as required under Federal Rule of Civil Procedure 4(m). *Recommended Dec. on Show Cause Order* (Docket # 63). On December 23, 2009, the Manuels objected to the Recommended Decision. *Objection to Recommended Dec.'s (Order to Show*

26

*Cause*) (Docket # 64).   In their objection, the Manuels assert that each of the Defendants was served with a copy of the Complaint and a request for waiver of service.  *Id.* at 2.  They ask:  "**IF THE OTHER DEFENDANTS REPLIED BACK, "IN THE WAY OF SENDING BACK COPY OF WAIVER OF SERVICE" WHY DO THE COURT THINK THAT THESE DEFENDANTS: (PENQUIS, BANGOR SHELTER, B&L, AN GILBERT & GRIEF) WAS NOT SERVED RIGHT**"  *Id.* at 1.  The Manuels ask for further time to complete service of process.  *Id.* at 2.

The Manuels' confusion is understandable.   Rule 4 of the Federal Rules of Civil Procedure essentially provides two ways to serve process on a defendant.  The first, which is the way the Manuels elected to proceed, is to send the defendant a copy of the complaint and summons together with a form requesting that the defendant waive service of process.  Fed. R. Civ. P. 4(d).  If the defendant within the judicial district signs the waiver form and returns it to the plaintiff, the defendant has 60 days to file an answer.  *Id.* 4(d)(3).  Some of the named defendants apparently waived their right to service of process and, in any event, filed responses to the complaints.  But, the law does not require those who receive a request for waiver of service of process to sign the waiver, and the Bangor Area Homeless Shelter, Penquis Community Action, B&L Properties, and Gilbert & Greif did not do so.[4]

The Rule provides an alternative means for serving an individual defendant.  Under Rule 4(e),

> an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at

---

[4] The Manuels have filed copies of certified mail, but the copies are not clear enough for the Court to know whether these defendants signed the return receipt.

the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appoint or by law to receive service of process.

Fed. R. Civ. P. 4(e).

The Rule provides a different rule for serving a corporation, partnership, or association. Under Rule 4(h),

a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served (1) in a judicial district of the United States (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant.[5]

Although the Manuels may have assumed that all the defendants would agree to waive service of process because some did, they now have the obligation to effect service in accordance with the Rule. The Magistrate Judge is certainly correct that now, over six months after the Manuels filed their complaint, their failure to effect service of process could justify dismissal. However, the Court is inclined to follow the Magistrate Judge's example in her handling of the amended complaint and having told the Manuels what they must do, give them an opportunity to do it.

The Court REJECTS the Magistrate Judge's Recommended Decision dated December 15, 2009 and ORDERS the Plaintiffs to effect service upon the remaining Defendants, Bangor Area Homeless Shelter, Penquis Community Action, B&L Properties, and Gilbert & Greif, within thirty (30) days of the date of this Order. According to the allegations in the Manuels' Complaint and Amended Complaint, each of the Defendants should be susceptible to service of process in the immediate area. The failure of the Plaintiffs to effect service of process within the

---

[5] Rule 4(h) also contains a provision that provides for service of process at places outside the judicial district, but it does not appear applicable here. Fed. R. Civ. P. 4(h)(2).

time limit established by this Order will result in a dismissal of the Complaint against each Defendant without prejudice.

## III.   CONCLUSION

In their various objections to the Magistrate Judge's Recommended Decisions, the Manuels contend that if the United States District Court affirms the Magistrate Judge's recommendations, it will be "taking away [the Manuels'] human rights" and will have given the Defendants "immunity from being accountable for there malicious and harmfully acts towards the Manuel Family." *See Manuel Opp'n # 68*.  The Court assures the Manuels that it bears them no ill will and it has studiously reviewed their allegations to determine whether they meet the applicable legal standards.  Federal law is highly complex and it is often difficult even for lawyers to bring a federal law suit and resist motions to dismiss.  The law requires that the allegations be very specific to meet the elements required by each statute.  Federal law does not provide a remedy for every perceived wrong, regardless of how strongly the individual may feel he or she has been unfairly treated.

Having performed a *de novo* review for each dispositive motion, the Court ORDERS:

1) The Magistrate Judge's Recommended Decision (Docket # 67) is hereby AFFIRMED for the reasons set forth in the Recommended Decision and for the further reasons set forth herein and the Court GRANTS the Bank of America's Motions to Dismiss (Docket # 5 & 52);

2) The Magistrate Judge's Recommended Decisions (Docket # 31, 67) are hereby AFFIRMED for the reasons set forth in the Recommended Decisions and for the further reasons set forth herein and the Court GRANTS the city of Bangor's Motion to Dismiss (Docket # 6, 51), the city of Bangor General Assistance's motion to dismiss (Docket # 6,

51), and the Penobscot Community Health Center and Rural Department of Housing's motions to dismiss (Docket # 22, 55);

3)  The Magistrate Judge's Recommended Decision (Docket # 28) is hereby AFFIRMED for the reasons set forth in the Recommended Decision and for the further reasons set forth herein and the court GRANTS the state of Maine's and the state of Maine Department of Motor Vehicles' Motion to Dismiss (Docket # 9) and STRIKES the designation of the Manuel children as party plaintiffs.

4)  The Magistrate Judge's Recommended Decision (Docket # 31) is hereby AFFIRMED for the reasons set forth in the Recommended Decision and for the further reasons set forth herein and the Court GRANTS the United States Army's Motion to Dismiss (Docket # 22); and,

5)  The Magistrate Judge's Recommended Decision (Docket # 67) is hereby AFFIRMED for the reasons set forth in the Recommended Decision and for the further reasons set forth herein and the Court GRANTS Park Woods motion to dismiss (Docket # 8).

6)  The Magistrate Judge's Recommended Decision (Docket # 63) is REJECTED and the Plaintiffs are ordered to effect service of process of the complaint and summons in accordance with Rule 4 within thirty (30) days of the date of this Order.  The failure to do so will result in a dismissal without prejudice of the cause of action against the Defendants who have not yet been served, specifically the Bangor Area Homeless Shelter, B&L Properties, Penquis Community Action, and Gilbert & Greif, attorneys.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 2nd day of March, 2010