UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

EUNICE MANUEL, *et al.*,           )
                                    )
    Plaintiffs,            )
                                    )
v.                                  )        Civil No. 09-339-B-W
                                    )
BANGOR, CITY OF, *et al.*,         )
                                    )
    Defendants             )

**RECOMMENDED DECISION
ON MOTIONS TO DISMISS (DOC. NOS. 76, 80 & 93) AND ON
MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. NO. 84)**

    The three remaining defendants in this case, Bangor Area Homeless Shelter (Doc. No. 76), B&L Properties (Doc. No. 80), and Penquis Community Action Program (Doc. No. 93), have all moved to dismiss this action because they claim the complaint fails to state a claim. Additionally, Gary E. Manuel has filed a cross-motion for partial summary judgment against all three defendants (Doc. No. 84). All four motions have been referred to me for recommended decision. I do not write on a blank slate as I have issued numerous Orders and Recommended Decisions since this complaint was first filed on July 31, 2009, including a prior recommended decision that recommended dismissal of all claims, including the claims against these three defendants. (See Doc. No. 67, incorporating recommended decisions likewise issued at Doc. Nos. 28, 31 & 63). The Court adopted those prior recommended decisions in all respects save one (Doc. No. 72), allowing the Manuels additional time to make service on these three defendants. Service has now been made and the matter is again referred to me for recommended decision.

    In this matter, *pro se* Plaintiffs Eunice and Gary Manuel were originally attempting to pursue civil claims for money damages against all of the following defendants: the Army, the Rural

Housing Service, the Penobscot Community Health Center, the State of Maine Bureau of Motor Vehicles, the City of Bangor/Bangor Department of Health and Community Services, Bank of America, Penquis Community Action, the Bangor Area Homeless Shelter, B&L Properties, and the Gilbert and Grief Law Firm.[1] As this varied cast of defendants would suggest, the Manuels complain about a broad range of disconnected happenings. I have now separately reviewed the three pending motions to dismiss and I recommend that the Court grant each motion, thereby rendering moot Gary Manuel's motion for partial summary judgment as to these three defendants. In the event the Court does not grant the defendants' motions to dismiss, I recommend the motion for partial summary judgment be denied because there is no factual record upon which to base the entry of even partial summary judgment.

*Bangor Area Homeless Shelter's Motion to Dismiss*

The pertinent allegations against the Homeless Shelter are found on page twelve of the amended complaint. (Doc. No. 37.) Gary Manuel alleges that he was staying at a facility belonging to the Bangor Area Homeless Shelter at 17 Bolling Drive in November of 2004 with his minor children. At approximately this point in time his wife, Eunice, was discharged from the armed forces and intended to come to Bangor and join the family. Gary notified Hector, a supervisor of the Homeless Shelter that his wife would be coming to live with the family. Eunice arrived at the residence on December 3, 2004, and two days later Hector told Gary he had broken the rules of the facility because he allowed a female to stay overnight. Gary felt that Hector and then General Assistance should have made accommodations for his entire family, but neither Hector nor General Assistance would do so and he was told he would have to vacate 17 Bolling Drive by December 17, 2004, or the police would come and move him. Gary alleges that the police took him and his family

---

[1] Gary Manuel filed a voluntary dismissal of his claims against the United States Army, the Bank of America, and Gilbert & Greif. In the same document Eunice Manuel purported to "release" all of her claims asserted in the July 2009 complaint to Gary Manuel. (Doc. No. 73). Eunice Manuel was terminated as a party as a result of this filing and all subsequent pleadings have been signed only by Gary Manuel.

from 202 Bolling Drive[2] to the Bangor Shelter (Main Street Men's Shelter) on December 19, 2004, where Mike, the supervisor, told him that since he had broken a rule at the men's shelter he could not be housed in Bangor any more. Mike sent him to the Ellsworth shelter which was unsatisfactory because it could not be arranged for Gary or his son to be transported to medical appointments. Gary sues the Bangor Area Homeless Shelter based upon a claim of race and disability discrimination.

Other than his general allegations regarding his race and disabilities, Gary Manuel offers absolutely no factual predicate upon which to base a claim that the Bangor Area Homeless Shelter made the decisions it made based upon either his race or disability. Indeed, whatever his race or his disability status, according to Manuel's pleading he was accepted into a homeless facility on Bolling Drive affiliated with this defendant. He was evicted when he broke a rule of that facility by allowing a woman to stay with him overnight. The gist of Gary Manuel's complaint is that the homeless facilities on Bolling Drive and Main Street had some affirmative obligation to provide him with suitable alternative housing because he alerted Hector in November to the fact that his wife would be coming to live with the family in early December. Neither Hector nor Mike is alleged to have done anything based upon Gary's race or disability. And there is no suggestion in Gary's pleading that the stated reason for either the eviction or the rejection from the Main Street facility was pretext for discriminatory animus. Gary believes he was wronged by the homeless shelter supervisors, but he does not allege any plausible facts to support even the barest inference that the wrong occurred because of his race or disability. To properly allege a claim in federal court, it is not enough merely to allege in conclusory fashion that a defendant acted unlawfully; a plaintiff must affirmatively plead

---

[2]  The interrelationship between the two Bolling Drive addresses and the Main Street shelter is not explained in plaintiff's pleadings regarding the homeless shelter, although Gary Manuel plainly alleges that 17 Bolling Drive was the location of the "Bangor Men Homeless Shelter." It appears from the amended complaint allegations that 202 Bolling Drive was an apartment being managed by B&L Properties, another of the defendants whose motion to dismiss is now under consideration. Defendant Bangor Area Homeless Shelter offers by way of footnote that it owns and operates the shelter located at 263 Main Street in Bangor and does not clarify in what way, if any, it has an affiliation with either of the Bolling Drive addresses or Hector, the supervisor. (Mot. to Dismiss at 3 n.2, Doc. No. 76.) Therefore, for purposes of this motion I assume that the facility at 17 Bolling Drive was run by the Bangor Area Homeless Shelter and that Hector is its employee.

3

"factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, __, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

### *B&L Properties' Motion to Dismiss*

The allegations against this defendant appear beginning on page four of the amended complaint. (Doc. No. 37.) Manuel alleges that he and his family searched for long-term rental apartments with the assistance of a property manager from B&L Properties. They found an apartment that met their specifications at 202 Bolling Drive during December 2004. The property manager informed them that she would need a deposit and that she had to check the Manuels' references through the Bangor Shelter. The Manuels made arrangements through a third party to obtain funds to cover the deposit and the B&L property manager advised them that the deposit had been secured and the apartment would be unlocked in order to facilitate their move over the weekend. The Manuels moved into the apartment, but Saturday evening a Bangor police officer and Steve, head of B&L's maintenance department, came to the apartment and accused them of breaking and entering. Steve had been alerted to their presence because a neighbor called him and said some black people had moved in overnight. When Steve tried to verify with the B&L business department that Gary's move had been approved, he was unable to obtain any acknowledgement of that fact and apparently the property manager who had told the Manuels they could move in over the weekend no longer could be located at B&L. After the weekend incident involving the alleged breaking and entering, the Manuels were told B&L no longer wished to rent to them and would not work with them. When the Manuels went to court on the breaking and entering charge they found it had been dismissed.

In 2006, the Manuels did rent an apartment on Ohio Street in Bangor owned by B&L Properties. There were a number of problems with that apartment including the fact that the Manuels' electric bill was unusually high due to some sort of electrical problems with the building.

4

They also experienced problems with the phone line at this apartment, apparently making it possible to hear others' conversations. Mr. Manuel also experienced problems with others opening his mail, peering into his apartment, and conducting surveillance of his family. He alleges that B&L authorized these intrusions in order to invade his privacy and create a database consisting of his personal information. He also complains that B&L workmen came to the apartment to change the doors and he could not be home at the time. Afterwards, he discovered his ring was missing. Manuel also claims that he was treated differently from his white neighbors in regard to dumping trash in the dumpster and having his uninspected car towed from the parking lot.

Manuel characterizes his legal claims as brought pursuant to "Civil Rights 1964, II, VI [18 U.S.C. § 1701]. [Invasion of Privacy], Civil Liability Act 2002 PART B Mental Harm][18 U.S.C. § 371] [BILL OF RIGHT IV]." In its motion to dismiss B&L has carefully parsed these facts under these causes of action and presented its legal arguments based upon the information provided in the amended complaint.[3] Turning first to the civil rights claim alleging racial discrimination, Title VI provides: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Gary Manuel's complaint is that B&L Properties, a landlord that accepts Section 8 tenants, a form of federal financial assistance, treated the Manuels differently from

---

[3] In his response to the motion to dismiss (Doc. No. 89), Gary Manuel mentions some other theories of liability including federal and state laws pertaining to the interception and disclosure of wire or electronic communications, violations of the Fair Housing Act, and a violation of 42 U.S.C. § 1985(3) in the form of a civil rights conspiracy. As B&L correctly points out in its reply, it has expended considerable time and expense in responding to the claims raised in the amended complaint. (Reply at 2, Doc. No. 94.) I do not believe it is fair to B&L or this Court to allow Mr. Manuel, simply because he is a *pro se* litigant, to continually change his theories and plead new claims. Manuel has had notice of the possible existence of such claims for a considerable period of time (See October 21, 2009, Orders Giving Leave to File Am. Compl., Doc. Nos. 29-30, and related recommended decisions). The fact that he raises these legal theories as to *this* defendant for the first time in his response to the motion to dismiss filed on April 2, 2010, is, in my view, abusive of the legal process that has been afforded to Mr. Manuel by this Court. Furthermore, none of these new "theories" is developed in such a manner as to indicate that the merits, or lack thereof, of the original claim is changed in any fashion by adding new statutory references.

other tenants based on their race. B&L argues that this claim is time barred because the appropriate statute of limitation would be the two-year limitation period "borrowed" from the Maine Human Rights Act. *See* 5 M.R.S. § 4613(2)(C) ("The action shall be commenced not more than 2 years after the act of unlawful discrimination complained of.")

The issue is whether this court should look to the statute of limitations period for most personal injury cases in Maine (six years pursuant to 14 M.R.S. § 752) or whether the two-year limitation period set forth in the Maine Human Rights Act should govern this action. *Cf. Cao v. Puerto Rico*, 525 F.3d 112, 115 (1st Cir. 2008) (recognizing that in determining the applicable prescriptive period for a 42 U.S.C. § 1983 claim the court should look to the statue of limitations period for personal injury cases in the forum state). To the best of my knowledge there is no Maine case nor any First Circuit law that addresses the precise issue of which statute of limitations governs actions brought pursuant to Title VI of the Civil Rights Act. However, as B&L acknowledges in its memorandum, the Supreme Court requires this Court to select the most appropriate or most analogous state statute of limitations following the process set forth in *Wilson v. Garcia*, 471 U.S. 261, 267 (1985), in order to determine the applicable prescriptive period. B&L relies upon Fourth Circuit precedent that applies state discrimination statutes when determining the limitations period under the ADA and Rehabilitation Act, neither of which contains a limitation period. *Wolsky v. Med. Coll. of Hampton Rds.*, 1 F.3d 222, 225 (4th Cir. 1993). However, the majority of circuit courts of appeal do not follow this rule and instead they apply personal injury statute of limitations periods to both ADA and Rehabilitation Act cases despite the existence of disability or public accommodations state statutes, such as the Maine Human Rights Act. *Everett v. Cobb County Sch. Dist.*, 138 F.3d 1407, 1409 (11th Cir. 1998); *Soignier v. Am. Bd. of Plastic Surgery*, 92 F.3d 547, 551 (7th Cir. 1996); *Baker v. Bd. Of*

6

*Regents of State of Kan.*, 991 F.2d 628, 631 (10th Cir. 1993); *Hickey v. Irving Indep. School Dist.*, 976 F.2d 980, 982 (5th Cir. 1992); *Morse v. Univ. of Vermont*, 973 F.2d 122, 125-26 (2d Cir. 1992). Whether applying the Fourth Circuit rule or the rule followed in other circuits, it is still a stretch to apply the ADA/Rehabilitation Act statute to a Title VI claim of racial discrimination. Cases discussing the applicable statute of limitations in the context of Title VI claims have generally looked to the statute of limitations applicable to § 1981 and § 1983 actions. *Chambers v. Omaha Public Sch. Dist.*, 536 F.2d 222 (8th Cir. 1976); *Baker v. Bd. of Regents of the State of Kansas*, 721 F. Supp. 270 (D. Kan. 1989); *Doe v. Southeastern Univ.*, 732 F. Supp. 7, 9 (D. D.C. 1990). In spite of B&L's persuasive arguments to the contrary and Gary Manuel's complete failure to address the issue other than in terms of equitable tolling, a doctrine totally inapplicable to this situation, I cannot recommend that the Manuels' claim of racial discrimination in relation to the 2006 conduct be dismissed as time barred under 42 U.S.C. § 2000d. I agree with B&L that, intuitively, it makes sense that the Maine Human Rights Act statute of limitation would be applicable to these facts, because the situation described by Manuel is completely analogous to the time barred action under Maine law. Nevertheless, the statutory purpose of 42 U.S.C. § 2000d is to hold the federal government to the same standards as § 1983 applies to the states regarding racial classifications that would violate the equal protection clause of the United States Constitution. *Regents of Univ. of California v. Bakke*, 438 U.S. 265, 284 (1978). In that way it does make logical sense that the same statute of limitation that would apply to § 1983 cases applies to a Title VI claim.

I turn, therefore, to B&L's secondary argument that this complaint fails to state a claim of actionable racial discrimination by it. First, I absolutely agree with B&L that the 2004 incident involving the maintenance staff member calling the Bangor police officer because a neighbor

7

reported that "some black people moved in overnight" cannot be considered to allege racial discrimination. The reference to racial background was incidental and in any event, it was merely reported to B&L, not instigated by B&L or one of its employees. Likewise the refusal to rent an apartment in 2004, based upon the allegations in the complaint, stemmed directly from the breaking and entering incident and had nothing to do with race. Any inference of failure to rent because of race is directly refuted by the fact that B&L did rent to Gary Manuel at a different location in 2006. The 2006 allegations of racial discrimination involving hauling garbage to a dumpster and threatening to tow an unregistered car are simply too random and insufficient to state a claim of intentional racial discrimination by B&L Properties. Manuel does not allege a pattern of racially motivated incidents directed against him nor does he describe intentional racial animus in other than the most conclusory fashion. To properly allege a claim in federal court, it is not enough merely to allege in conclusory fashion that a defendant acted unlawfully. A plaintiff must affirmatively plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, __, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Manuel's claim under 42 U.S.C. § 2000a (Title II) does not fare any better. That statute applies to public accommodations which are defined at § 2000a(b)(1-4). As alleged in the complaint, B&L Properties provides long-term rental apartments and therefore does not fall within the statutory definition of public accommodation.

Although the Manuels also complain that B&L violated 18 U.S.C. § 371 and 18 U.S.C. § 1701, those are criminal statutes and do not create a private cause of action. As for the remaining claims, B&L has explained in its memorandum (Doc. No. 80 at 12-14) why those

8

claims fail and I agree with their analysis. Accordingly, I recommend that the claims against B&L Properties be dismissed with prejudice.

*Penquis Community Action Program's Motion to Dismiss*

*Gary* Manuel alleges that in 2008 he went to Penquis CAP in Bangor, Maine, to obtain assistance in buying a home for his family. He spoke with a Darrell Gentry who told him that the program was for first time home buyers and would cover the down payment and closing costs up to $10,000.00. The program required that the prospective buyer complete a homeowner's course, which Gary did, obtaining a certificate. Gary took the certificate and visited a couple of banks seeking a loan approval. Eventually, an entity identified as Embark Financial LLC apparently indicated it would work with the Manuels. It obtained a realtor and found a house within the Manuels' budget. They put down a deposit on the house. However, Darrell Gentry and the person at Embark Financial did not exchange the necessary paperwork within the required time periods and the Manuels were unable to complete their purchase of the home. Later they learned that Penquis CAP provided direct financing of home loans and so they went back to Darrell Gentry to ask him why he had not told them of that program. Eunice and Gary Manuel then applied for a direct loan through Penquis CAP but the loan was refused. They were told they had been refused because of their credit report. Darrell Gentry denied that Penquis Cap discriminated against Gary Manuel when Manuel asked him why he had discriminated. Then, one year later, Manuel saw Gentry working at a bank and Gentry told him he had gotten a much better job.

The Manuels' claim against Penquis CAP could only be fairly viewed as a violation of the Federal Fair Housing Act which is subject to a federal two-year statute of limitation. 42 U.S.C. § 3613(a)(1)(A). The events described above occurred at some unspecified time in 2006 and even

9

if they occurred on December 31, 2006, the complaint was not filed until July 31, 2009, more than two years after the claim accrued. It is time barred. As to the other claims asserted by the Manuels, these facts simply do not support a claim of intentional racial discrimination and there are no plausible inferences that could be drawn to support a claim of racial discrimination.

## CONCLUSION

Based upon the foregoing I recommend that the motions to dismiss by these three defendants be granted and that Gary Manuel's motion for partial summary judgment be denied as moot.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

June 7, 2010